**The PEOPLE of the State of Colorado, Petitioner,**

**v.**

**Peter RODRIGUEZ, Respondent.**

**No. 04SC219.**

Supreme Court of Colorado, En Banc.

May 31, 2005.

David J. Thomas, District Attorney, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Golden, for Petitioner.

Lloyd L. Boyer, P.C., Lloyd L. Boyer, Englewood, for Respondent.

H. Patrick Furman, Boulder, Amicus Curiae for Colorado Criminal Defense Bar.

Justice MARTINEZ delivered the Opinion of the Court.

The People of the State of Colorado appeal a district court order overturning a county court judgment against Respondent, Peter Rodriguez. The district court found that Rodriguez's Colorado Constitutional right to a jury of twelve was violated when the county court denied his demand for a jury of twelve on misdemeanor charges and instead provided only a jury of six. We determine that a defendant does not have a right to a jury of twelve under the Colorado Constitution when charged only with a misdemeanor offense. Accordingly, we conclude that section 18–1–406, C.R.S. (2004), and Crim. P. 23(a)(2), which provide for a jury of six in misdemeanor cases, are not unconstitutional.

## I. Facts and Procedure

In 2001, Rodriguez's estranged wife discovered photographs of nude children in Rodriguez's possession. His wife alerted the police and they seized the photographs. While searching through Rodriguez's belongings, the police also found items the police suspect-

ed Rodriguez stole from his wife's niece. Police issued Rodriguez a summons and complaint charging him with two misdemeanor offenses—Sexual Exploitation of a Child, a class 1 misdemeanor,[1] and Theft Under $100,[2] a class 3 misdemeanor—and ordered him to appear in county court.

Prior to trial, Rodriguez demanded a jury of twelve pursuant to article II, section 23, of the Colorado Constitution. The county court denied Rodriguez's request for a jury of twelve, finding instead that both Crim P. 23(a)(2) and section 18–1–406(1) provide for a jury of six in misdemeanor cases. The jury of six returned a guilty verdict on both charges.

Rodriguez appealed to the district court arguing, *inter alia*, that he was denied his Colorado Constitutional right to a jury of twelve. The district court agreed with Rodriguez and held that the Colorado Constitution mandates a twelve-person jury for misdemeanor cases if a jury of twelve is properly demanded. Because Rodriguez had requested a twelve-person jury when he entered his not guilty plea, the court remanded the case to the county court for a new trial.

We granted certiorari to determine whether a defendant who is being tried for a misdemeanor has a Colorado Constitutional right to a jury of twelve and whether section 18–1–406(1) and Crim. P. 23 are therefore unconstitutional in providing for a jury of six in a misdemeanor case.

■ The district court's interpretation of the Colorado Constitution is subject to de novo review. *See Colo. Dept. of Labor and Employment v. Esser*, 30 P.3d 189, 194 (Colo. 2001).

## II. Analysis

■ In this case we determine if article II, section 23, of the Colorado Constitution ("section 23"), which provides in part: "The right of trial by jury shall remain inviolate in criminal cases; but a jury in civil cases in all courts, or in criminal cases in courts not of record, may consist of less than twelve persons, as may be prescribed by law," establishes the right to a jury of twelve in misdemeanor cases.[3] Essential to our analysis is the principle that Colorado's Constitution, "unlike the federal constitution, does not comprise a grant of but rather, a limitation on power." *Reale v. Bd. of Real Estate Appraisers*, 880 P.2d 1205, 1208 (Colo.1994). "All power which is not limited by the constitution is vested in the people and may be exercised by them via their elected representatives so long as the constitution contains no prohibition against it." *Id.* Therefore, if we find section 23 establishes a right to a jury of twelve in misdemeanor cases, then section 18–1–406(1) and Crim P. 23, which both provide for juries of six,[4] unconstitutionally encroach upon that right. If, however, section 23 does not establish a right to a jury of

1. *See* § 18–6–403(3)(b.5), 6 C.R.S. (2001). Class 1 misdemeanor offenses carry a minimum sentence of six months imprisonment, or five hundred dollars fine, or both, and a maximum sentence of eighteen months imprisonment, or five thousand dollars fine, or both. § 18–1.3–501(1), C.R.S. (2004). Pursuant to section 18–1.3–501(3)(a), misdemeanor sentences can be extended by six months if the offense presents an extraordinary risk of harm, which extends the maximum imprisonment to two years in county jail.

2. *See* § 18–4–401(1) and (2)(a), 6 C.R.S. (2001). Class 3 misdemeanor offenses carry a minimum sentence of a fifty dollar fine and a maximum of six months imprisonment, or seven hundred fifty dollars fine, or both. § 18–1.3–501(1).

3. Under the circumstances of this case, there is no question whether Rodriguez was entitled to a jury trial. We have previously interpreted "criminal cases" as identified in section 23 to be those offenses punishable by imprisonment exceeding six months or a fine of more than $500. *See Austin v. City and County of Denver*, 170 Colo. 448, 455, 462 P.2d 600, 604 (1969). Because the misdemeanor charges in this case are punishable by more than six months imprisonment, Rodriguez is clearly entitled to a jury trial.

4. Section 18–1–406(1) provides: "(1) Except as otherwise provided in subsection (7) of this section, every person accused of a felony has the right to be tried by a jury of twelve whose verdict shall be unanimous. In matters involving misdemeanors, the accused is entitled to be tried by a jury of six. In matters involving 'petty offenses', the accused has the right to be tried by a jury under the terms and conditions of section 16–10–109, C.R.S." Crim P. 23 provides: "(1) Every person accused of a felony has the right to be tried by a jury of twelve" and "(2) In matters involving all misdemeanors, the accused is entitled to be tried by a jury of six."

twelve in misdemeanor cases, the General Assembly and this court, through ·its rule-making powers, may provide for less than twelve jurors.

Accordingly, our analysis is twofold. First, we determine whether section 23 establishes a right to a jury of twelve that may not be encroached upon by legislation or procedural rule. Next, because we find that section 23 does establish a defendant's right to a jury of twelve in some criminal cases, but not others, we determine if the right extends to misdemeanor cases. We conclude that there is no constitutional right to a jury of twelve in misdemeanor cases in Colorado and therefore section 18–1–406(1) and Crim. P. 23 are constitutional.

## A. Right to a Jury of Twelve

■ To determine whether section 23 establishes a right to a jury of twelve in criminal cases, we turn first to the language of section 23. We find that the plain and clear meaning implies a right to a jury of twelve. Because this right is implied, rather than directly stated, we next look to the proceedings of the Constitutional Convention during which section 23 was enacted for evidence of the framers' intent. We find that the framers intended to preserve the common law right to a jury of twelve in "courts of record." As such, we conclude that section 23 establishes the right to a jury of twelve in "courts of record."

### 1. Plain and clear meaning of section 23

■ Our state "constitution derives its force ... from the people who ratified it, and their understanding of it must control. This is to be arrived at by construing the language, used in the instrument according to the sense ·most obvious to the common understanding." Alexander v. People, 7 Colo. 155, 167, 2 P. 894, 900 (1884); see also Prior v. Noland, 68 Colo. 263, 267, 188 P. 729, 730 (1920) ("The presumption is in favor of the natural and popular meaning in which the words are usually understood by the people who have adopted them."). Therefore, we afford the language of the Constitution its "ordinary and common meaning" to give "effect to every word and term contained therein, whenever possible." Bd. of County Comm'rs v. Vail Assocs., Inc., 19 P.3d 1263, 1273 (Colo.2001). When the language "is plain, its meaning clear, and no absurdity involved, constitutional provisions must be declared and enforced as written." In re Great Outdoors Colo. Trust Fund, 913 P.2d 533, 538 (Colo.1996). "[I]n so doing, technical rules of construction should not be applied so as to defeat the objectives sought to be accomplished by the provision under consideration." Cooper Motors v. Bd. of County Comm'rs of Jackson County, 131 Colo. 78, 83, 279 P.2d 685, 688 (1955). It is with these principles in mind that we review section 23.

Section 23 states that in criminal cases in a "court not of record," fewer than twelve jurors may be provided "by law." The natural implication of this provision is that when in a "court of record," a defendant has a right to a jury of twelve that cannot be reduced by the General Assembly. Several other state courts interpreting similar provisions in their respective state constitutions have reached the same conclusion.[5] This court has also

---

5. See City of Seattle v. Filson, 98 Wash.2d 66, 70, 653 P.2d 608, 610–11 (1982) (state constitutional provision identical to section 23 allowing juries of less than 12 in courts not of record, creates a right to twelve-member juries in courts of record), overruled on other grounds by In re the Matter of Eng, 113 Wash.2d 178, 776 P.2d 1336 (1989); Taylor v. State, 612 P.2d 851, 853 (Wyo. 1980) (interpreting a constitutional provision identical to section 23 and holding that "[i]t is beyond dispute that the Wyoming Constitution guarantees a criminal defendant in a court of record the right to a unanimous verdict by twelve impartial jurors."); Porter v. Superior Court, 104 Ariz. 36, 36–37, 448 P.2d 92, 92–93 (1968) (interpreting very similar section of state constitution to mean that the "natural and necessary implication of the [ ] section is that provision cannot be made by law for a jury of a number less than twelve in courts of record"); Power v. Williams, 53 N.D. 54, 205 N.W. 9, 13 (1925) (state constitutional provision preserving right to jury trial, but permitting "a jury in civil cases, in courts not of record, may consist of less than twelve men, as may be prescribed by law," held to require twelve jurors in courts of record); Sinopoli v. Chicago Rys. Co., 316 Ill. 609, 617, 147 N.E. 487, 490 (1925) (court found state constitution permitting less than twelve jurors in justice of the peace courts preserved the common-law jury of twelve in all courts exercising common law jurisdiction); People v. Luby, 56 ·Mich. 551, 552, 23

acknowledged the implied right to a jury of twelve in criminal cases under the Colorado Constitution.[6]

■ We must also "presume that each phrase of the constitution was included for a purpose." *Reale*, 880 P.2d at 1208. As such, section 23 must imply a jury of twelve requirement in criminal cases in courts of record because interpreting the provision to mean otherwise would render the reference to "less than twelve jurors" superfluous. If the General Assembly was free to provide for fewer than twelve jurors in any case, or in any court, it would not be necessary to explicitly state in section 23 that fewer than twelve jurors is permissible in criminal cases in courts not of record. If we were to read no implied right to a jury of twelve in courts of record, the express reference in section 23 to the circumstances where the General Assembly can provide for less than twelve jurors would be unnecessary. In other words, because section 23 provides an exception relating to the number of jurors in "courts not of record," section 23 must be read to provide a limit on the General Assembly's power to provide for fewer than twelve jurors in "courts of record." This is, of course, the most reasonable conclusion to be drawn from section 23.

The People nevertheless set forth several arguments against this construction.

First, the People contend Colorado courts have previously rejected the notion that there is any state constitutional right to a jury of twelve in criminal cases. The People cite *People v. Burnette*, 775 P.2d 583 (Colo. 1989), and *People v. Chavez*, 791 P.2d 1210 (Colo.App.1990). These cases, however, do not involve the construction of section 23 or the extent of rights protected by section 23. In *Burnette*, we addressed the question of whether it was permissible pursuant to Crim. P. 24(e) for an alternate juror to replace a sitting juror who becomes disabled during the jury's deliberations. 775 P.2d at 584–85. Only in a footnote and without discussion did we note that "the right to a jury of twelve and twelve only in non-capital felony cases" is not a constitutional necessity. *See Burnette*, 775 P.2d at 589 n. 6 (citing *People ex rel. Hunter v. Dist. Court*, 634 P.2d 44 (Colo. 1981)). Similarly, the court of appeals in *Chavez* did not analyze section 23 or discuss the rights afforded by section 23. *See Chavez*, 791 P.2d at 1211. Instead, the court of appeals relied solely on the footnote in *Burnette*. *Id.*

Furthermore, because *Burnette* relies on *Hunter* for the proposition that the number of jurors has no constitutional basis, we turn to *Hunter*. We also find *Hunter* inapposite. In *Hunter*, this court addressed whether "the constitutional guarantee of a trial by 'jury' necessarily requires trial by exactly twelve persons." 634 P.2d at 46. Unlike the present case, the accused in *Hunter sought a trial by jury of less than twelve* persons. *Id.* at 45 (defendant sought a jury of one). The court concluded that there was no constitutional language mandating that an accused be tried by a jury of twelve in non-capital felony cases where he elects to be tried by fewer than twelve. *Id.* at 46. The court did not, however, address the question of whether a jury of twelve was required where a defendant demanded twelve.

---

N.W. 218, 218 (1885) (interpreting state constitution provision addressing jury trial in criminal prosecutions "which may consist of less than twelve men in all courts not of record," Mich. Const art. VI, sec. 28 (1850), to be an exception to the otherwise constitutional number of twelve jurors); *Hill v. People*, 16 Mich. 351, 355 (1868) ("'Our constitution in retaining the right of trial by jury, tacitly refers to and adopts the common law number. In criminal cases in courts of record this is put beyond all doubt by the 28th section of article 7. 'In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of *less than twelve* men in all courts *not of record*.' ").

6. Just thirteen years after the adoption of the Colorado Constitution, in *Parker v. People*, 13 Colo. 155, 165, 21 P. 1120, 1123 (1889), this court noted that "it is undoubtedly true that the right guarantied [by the state constitution] is the right of trial by a common-law jury of 12 persons." The decision in *Parker*, however, is not dispositive in this case because it did not specifically address the origin of the right or explain if the right was implied by section 23. *See id.* (holding that there is no limitation on General Assembly to reasonably regulate the manner in which persons competent for jury duty are to be selected).

Because the People rely upon a line of cases that originate with *Hunter* for the proposition that there is no constitutional right to a jury of twelve under section 23, and *Hunter* is inapposite, we do not agree with this proposition.

Next, the People contend that because the United States Constitution does not establish the right to a jury of twelve, the Colorado Constitution similarly provides no such right. We disagree.

■ The Sixth Amendment of our federal constitution does not require a jury of twelve in criminal cases in state courts. *See Williams v. Florida*, 399 U.S. 78, 102–03, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). The Sixth Amendment states, in part, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed . . . ." U.S. Const. amend. VI. In reviewing the rights protected by this amendment, the United States Supreme Court acknowledged the long history of juries of twelve in the United States and their common law origin in England dating back to the Magna Carta. *Williams*, 399 U.S. at 89–91, 90 S.Ct. 1893. The Supreme Court concluded, however, that the right to "an impartial jury" under the Sixth Amendment did not require twelve persons. *Id.* at 103, 90 S.Ct. 1893. Instead, the Court found the number twelve to be an "historical accident" by which the founders of our federal constitution did not expressly intend to preserve when they promulgated the Sixth Amendment. *Id.* at 102–03, 90 S.Ct. 1893. As such, while criminally accused maintain a right to a jury trial under the federal constitution, the right does not include the right to a jury of twelve in state court.

Similar to the federal constitution, the state counterpart to the Sixth Amendment lies in article II, section 16, of the Colorado Constitution ("section 16") and provides: "In criminal prosecutions the accused shall have the right to . . . a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Colo. Const. art. II, sec. 16. In addition to section 16, however, the framers

of the Colorado Constitution adopted section 23 which goes beyond the protections of the Sixth Amendment and has no comparable federal counterpart.

■ Given the incorporation of section 23 in the Colorado Constitution, we reject the notion that because the federal constitution does not protect the right to a jury of twelve, we should follow suit in Colorado. Colorado's constitutional provisions are independent of, and may extend beyond, the federal constitution to offer greater protection for the people of Colorado. *See People v. Young*, 814 P.2d 834, 842 (Colo.1991). Not only did the framers of Colorado's Constitution choose to include both sections 23 and section 16, but section 23 goes on to specifically identify "twelve" in reference to the number of jurors in criminal cases. To follow the People's reasoning, we would strip section 23 and its specific reference to "twelve" of all meaning.

Last, the People argue that section 23 does not implicitly establish the right to twelve jurors by pointing to our repeated rejection of the proposition in *City of Denver v. Hyatt*, 28 Colo. 129, 63 P. 403 (1900) that section 23 implies the right to a jury trial in civil cases. In *Hyatt*, this Court found that the second part of section 23 implicitly recognized a right to a jury trial in civil cases because it provided for juries of less than twelve in civil cases. 28 Colo. at 148–49, 63 P. at 410. The court reasoned that the Constitution would not have provided a modification to the right to a jury trial in civil cases if the right itself did not exist in the first place. *Id. Hyatt* stands alone as the only case in Colorado to find a jury trial right in civil cases, while several other decisions reject this interpretation of section 23. *See Garhart ex rel. Tinsman v. Columbia/Healthone, L.L.C.*, 95 P.3d 571, 580 n. 9 (Colo.2004) (listing several cases that find the Colorado Constitution does not guarantee a right to a jury trial in civil cases). We recently rejected *Hyatt* expressly to affirm the long-standing authority in Colorado that there is no right to a jury trial in civil cases under the Colorado Constitution. *Scholz v. Metro. Pathologists, P.C.*, 851 P.2d 901, 906 (Colo.1993).

The People argue that because we have rejected the rationale in *Hyatt* and found the second part of section 23 [7] has no implicit meaning with respect to civil cases, we should reject similar logic that the second part has any implicit meaning with respect to criminal cases. That is, simply because the second part of section 23 provides for less than twelve jurors in "courts not of record," there is no reason to find that twelve jurors are mandated in "courts of record." Based on two primary differences between the treatment of civil cases and criminal cases in section 23, we disagree.

First, the initial part of section 23, "[t]he right of trial by jury shall remain inviolate in criminal cases . . . .," specifically provides for the right to a jury trial in criminal cases. In contrast, no part of section 23 addresses or provides for any "inviolate right" to a jury trial in civil cases. As such, the second part of section 23 that addresses civil cases stands as the sole constitutional provision addressing jury trials in civil cases. It merely states that the General Assembly may provide for fewer than twelve jurors in civil cases. In absence of section 23 establishing an inviolate right to a jury trial in civil cases, there is no support for any finding that section 23 provides a right to a jury trial in civil cases.

Second, section 23 provides that there may be less than twelve jurors in all civil cases, but restricts the ability of the General Assembly to reduce the number of jurors in criminal cases to "less than twelve" only in "courts not of record." This difference cannot be overlooked. The framers distinguished between the General Assembly's power to reduce the number of jurors in civil cases, but only provided for such a power in less than all criminal cases. In doing so, it appears clear that the framers only intended to extend the General Assembly's power to reduce the number of jurors in less than all criminal cases. In other words, the power to reduce the number of jurors in some criminal cases must be an exception to what is otherwise a limit on the General Assembly's power to reduce the number of jurors in all other criminal cases.

Therefore, based upon the text and common understanding of section 23, it appears section 23 implicitly establishes a right to a jury of twelve in criminal cases in "courts of record" that cannot be circumscribed by the General Assembly or any rule of procedure. However, to resolve any doubt, we turn to the history and origin of section 23.

### 2. History and origin of section 23

While it appears that section 23 can be read as an implied limitation on the power of the General Assembly to reduce the number of jurors in certain criminal cases, our inquiry cannot stop here. Where it appears that rights or limitations on the power of the General Assembly are implied by the state Constitution, "it becomes highly important to ascertain, if that may be done, what the framers of the Constitution really had in mind, and actually intended to cover, by the enactment of this provision." *Schwartz v. People*, 46 Colo. 239, 257, 104 P. 92, 98 (1909). We may look to the record of the proceedings of the Constitutional Convention as well as "the attitude of the members of that body, as shown by the record concerning the then existing [sic] laws on that subject." *Id.* We also take notice that in many cases, "when a state adopts the constitutional or legislative provisions of another state, it also adopts the construction given to such provisions by the decisions of the courts of the state from which they are taken." *Lace v. People*, 43 Colo. 199, 203, 95 P. 302, 304 (1908). Furthermore, "a court may and should look to the state of things existing when the Constitution was framed and adopted and [each] provision must be presumed to have been framed and adopted in the light and understanding of prior and existing laws and with reference to them." *Krutka v. Spinuzzi*, 153 Colo. 115, 124, 384 P.2d 928, 933 (1963) (internal quotations omitted). Thus, we turn to the history and origin of section 23.

It is well known that many of Colorado's constitutional provisions were based on the Illinois, Pennsylvania, and Missouri Constitutions. *See* Dale A. Oesterle & Richard B.

---

7.  "[B]ut a jury in civil cases in all courts, or in criminal cases in courts not of record, may consist of less than twelve persons, as may be prescribed by law."

Collins, *The Colorado State Constitution: A Reference Guide* 1 (2002); *see also McIntyre v. Bd. of County Comm'rs,* 86 P.3d 402, 414 n. 7 (Colo.2004). Looking to these states, the Missouri and Illinois Constitutions both had provisions similar to Colorado's section 23 prior to the adoption of the Colorado Constitution in 1876.

In Illinois, article II, section 5, of the Illinois Constitution of 1870 provides: "the right of trial by jury, as heretofore enjoyed, shall remain inviolate, but the trial of civil cases, before justices of the peace, by a jury of less than twelve men, may be authorized by law." This provision is similar to section 23 and at least one Colorado case implicitly attributes this provision as the origin of section 23. *See People v. Hall,* 60 P.3d 728, 734 (Colo.App. 2002).

The text of section 23 and the proceedings of Colorado's Constitutional Convention, however, reveal that section 23 more closely resembles the jury right provision in Missouri's Constitution. Article II, section 28, of the Missouri Constitution of 1875 provides: "The right of trial by jury, as heretofore enjoyed, shall remain inviolate; but a jury for the trial of criminal or civil cases in courts not of record may consist of less than twelve men, as may be prescribed by law." Unlike the Illinois provision that only permits fewer than twelve jurors in justice of the peace courts, the Missouri provision utilizes the same "courts not of record" distinction as section 23 in Colorado. The Missouri provision, also similar to section 23, provides an exception to the jury of twelve requirement in criminal cases; the Illinois provision only provides for fewer than twelve jurors in civil cases. Furthermore, both the Missouri provision and section 23 also address grand

jury requirements, while there is no mention of grand juries in the Illinois provision.[8]

The proceedings of the Colorado Constitutional Convention also support the conclusion that section 23 originated from the Missouri Constitution. Just two months after the adoption of Missouri's 1875 Constitution the Constitutional Convention to create Colorado's first constitution met for the first time. *Proceedings of the Constitutional Convention for the State of Colorado* 18 (1907) (hereinafter "*Proceedings*"). The Convention broke into committees, each responsible for preparing separate articles of the constitution to propose to the Convention as a whole. *Id.* at 24–25. In January 1876, the Committee on Bill of Rights proposed to the Committee of the Whole, among other rights, the right to a jury trial: "The right of trial by jury as heretofore enjoyed shall remain inviolate, but a jury for the trial of criminal cases in courts not of record may consist of less than twelve men, as may be prescribed by law." *Id.* at 91. The only difference between the provision introduced in Colorado and the Missouri Constitution is the omission of "civil" cases in the proposed Colorado provision.[9]

Given the nearly identical language and phrasing used, as well as the close proximity in time to the adoption of the 1875 Missouri Constitution, it appears that the provision proposed in Colorado was based upon the 1875 Missouri Constitution. Because we find that section 23 originated from article II, section 28, of the Missouri Constitution of 1875, we turn to the source of the Missouri provision to aid in our understanding of section 23.

---

8. The Colorado and Missouri provisions provide: "Hereafter, a grand jury shall consist of twelve men, any nine of whom concurring may find an indictment or true bill." Article II, section 5, of the Illinois Constitution of 1870 does not address grand jury requirements at all.

9. There is a discrepancy in the records of the Constitutional Convention that suggests the provision as introduced in Colorado may have been identical to the Missouri provision. Although the minutes of the Convention make it clear that the quoted language above was presented to the Committee of the Whole, the minutes also pro-

vide that when this provision was modified and approved by the Committee of the Whole, the modification to the Committee on Bill of Rights version was proposed as inserting "after the word 'Civil,' the words 'cases in all courts'." *Proceedings* at 209–10. The record of this modification suggests that "civil" cases were included as part of the Committee on Bill of Rights' proposed provision. Therefore, it is possible the provision introduced by the Committee on Bill of Rights did in fact contain reference to "civil cases in courts not of record" making it identical to Missouri's provision.

Missouri adopted its first constitution in 1820 that included one provision establishing the right to a jury trial: "That the right to a jury shall remain inviolate." [10] Mo. Const. of 1820 art. XIII, section 8. The Missouri Supreme Court interpreted this provision in 1860.

In *Vaughn v. Scade,* 30 Mo. 600, 603 (1860), the Supreme Court of Missouri addressed an appeal from the "law commissioner's court" where a defendant was denied his request for a jury of twelve and instead only permitted the defendant a jury of six. The law commissioner's court was a court of record and exercised its jurisdiction according to the common law. 30 Mo. at 603.

The Missouri court found that the 1820 Constitution, providing "[t]hat the right to a jury shall remain inviolate," required a jury of twelve as well as unanimity in the jury verdict. *Id.* The court explained why the constitutional protection of the "inviolate" right to a jury protects the right to a jury of twelve:

> Certainly if there are any essential requisites in a jury trial, among them must be the number of jurors and unanimity in their verdict. If the declaration of rights does not preserve these elements of the trial by jury from change, then it is in the power of the general assembly to take away from that mode of trial all those incidents which have endeared it to the people among whom it has prevailed. If, in cases where the right to a trial by jury is secured, the number of jurors can be reduced from twelve to six, with equal propriety it can be reduced to two or four. The term "trial by jury" was well known and understood at the common law, and in

that sense it was adopted in our bill of rights.

*Id.* at 603–04. Accordingly, the court found that in courts of record having common law jurisdiction and proceedings in accordance with common law, where a party demanded a jury of twelve, he was entitled under article XIII, section 8, of the Missouri Constitution. *Id.* at 604. The court went on to explain, however, that its holding was limited in that it should not be "a matter of course that a jury in a justice's court must likewise consist of twelve men." *Id.* The court reasoned that "justices' courts, not being courts of record, are not within the constitutional provision." *Id.* at 604–05. The court advised "[t]he legislature in its discretion may give assistance to justices [of the peace] in the exercise of their jurisdiction, and that may be any number of men that is deemed expedient." *Id.* at 605.

Missouri's second constitution, adopted in 1865, incorporated this same provision. *See* Mo. Const. of 1865, art. I, sec. 17. The state again adopted a new constitution in 1875 which set forth article II, section 28, which, as discussed above, substantially mirrors section 23.

According to the Missouri Supreme Court, the change in language used in the 1875 Constitution was not intended to modify the previously protected right to a jury trial. *Rice v. Lucas,* 560 S.W.2d 850, 855 (Mo. 1978). Instead, the "proper rule of construction, therefore, undoubtedly, is that the Constitution of 1875 preserves the right of trial by jury, as that right came from the common law or the territorial statutes, in exactly the same status as was guaranteed under the two

---

**10.** Several courts have found the right to a jury of twelve based on similar provisions in their respective state constitutions. *See Byrd v. State,* 317 Ark. 609, 612, 879 S.W.2d 435, 437 (1994); *Blum v. Merrell Dow Pharm., Inc.,* 534 Pa. 97, 112, 626 A.2d 537, 548 (1993) (state constitution providing that "[t]rial by jury shall be as heretofore and the right thereof remain inviolate" required jury of twelve where it existed at common law); *State v. Hamm,* 423 N.W.2d 379, 385–86 (Minn.1988), *superseded by state constitutional amendment; Brame v. Garwood,* 339 So.2d 978, 979 (Miss.1976) (constitutional provision that "right of trial by jury shall remain inviolate" incorporated common law right to a jury of

twelve); *Gilbreath v. Wallace,* 292 Ala. 267, 272–73, 292 So.2d 651, 655–56 (1974) (same); *Advisory Opinion to Senate. of the State of Rhode Island and Providence Plantations,* 108 R.I. 628, 633, 278 A.2d 852, 854 (1971) (same); *but see In the Matter of Public Law No. 305 and Public Law No. 309 of the Indiana Acts of 1975,* 263 Ind. 506, 513, 334 N.E.2d 659, 662–63 (Ind.1975) (in light of *Williams v. Florida,* state constitution providing "right of trial by jury shall remain inviolate" did not incorporate common-law twelve-person jury); *Pitcher v. Lakes Amusement Co.,* 236 N.W.2d 333, 338 (Iowa 1975) ("inviolate" right to jury did not incorporate common-law requirements of jury trials).

preceding Constitutions." *Id.* That is, the 1875 change sought to clarify the jury right as it existed under the prior constitutions and as it was described in *Vaughn. See id.* at 854–55. This, of course, included the right to trial by a jury of twelve and an exception in "courts not of record."

When the constitutional framers in Colorado proposed the jury trial right based on Missouri's 1875 Constitution, we may presume they sought to provide the right as it existed in Missouri. *Lace,* 43 Colo. at 203, 95 P. 302 at 304. Under such a construction, the proposed provision would have protected the right to trial by a jury of twelve and an exception in "courts not of record." The Constitutional Convention, however, did not adopt the provision exactly as it was proposed by the Committee on Bill of Rights. Accordingly we look to the remainder of the Convention proceedings to determine what affect, if any, the framers intended by modifying the language incorporated from the Missouri Constitution.

After the jury trial right provision was introduced at the Convention by the Committee on Bill of Rights, the Committee of the Whole recommended that the language be changed to allow the General Assembly to provide for fewer than twelve jurors in "civil cases *in all courts*" in addition to criminal cases in courts not of record. *Proceedings* at 209 (emphasis added). The Committee of the Whole, having changed the right to jury trial in civil cases as it existed before, removed the "as heretofore enjoyed" language and specified that the inviolate jury trial right was only extended "in criminal cases." *Id.* at 209–10. The Committee of the Whole approved the final provision and adopted it as article II, section 23: "The right of trial by jury shall remain inviolate in criminal cases; but a jury in civil cases in all courts, or in criminal cases in courts not of record, may consist of less than twelve men, as may be prescribed by law." *Id.* at 666. Section 23 remains substantially identical today.[11]

The framers explained the reasoning behind section 23 in their Address to the Peo-

ple: "The petit jury system has been modified as to permit the organization of a jury of less than twelve men in civil cases, thereby materially reducing the expense of our courts." *Proceedings* at 724. In reference to the jury right in criminal cases, the Address explains "[t]he right of trial by jury in all criminal cases has been preserved." *Id.* There was no mention of any change to the petit jury system in criminal cases. *Id.; cf. Proceedings* at 725 (framers describing the "radical changes" in the 1876 Constitution to the then-existing territorial judicial system).

These proceedings make clear that section 23 originated from Missouri's 1875 Constitution and the framers' intent to preserve the right of a jury trial in criminal cases. In addition, the Address to the People makes clear that the only change to the jury trial right was to the number of jurors in civil cases. As such, the intent of section 23 as conveyed by the framers and adopted by the people of Colorado preserved the right to a jury in criminal cases as it existed in 1876. That is, section 23 provides the right to a jury of twelve in criminal cases in courts of record.

Based upon the plain language and history supporting the adoption of section 23, we conclude that an accused has a right to a jury of twelve in "courts of record" and a limited exception exists whereby juries may be limited to fewer than twelve jurors in "courts not of record." Although this reading of the statute appears easily applicable on its face, difficulty arises in absence of any constitutional definition of "court of record" or "court not of record" and the reorganization of the judicial article in 1962.

**B.   Section 23 Applied**

   ■   As discussed above in Part A., it is clear that the framers of Colorado's Constitution intended to preserve the right to a jury of twelve in some criminal cases and permit the General Assembly to limit the number of jurors in others. Only in "criminal cases in courts not of record" does the General As-

---

**11.**  The only modification to section 23 was to make it gender-neutral and provide that no person can be denied to the right to serve on a jury on the basis of sex. *See* Sen. Concurrent Res. No. 1, 1943 Colo. Sess. Laws 687.

sembly have the power to reduce the number of jurors to fewer than twelve.

In distinguishing between courts of record and courts not of record, we again look the language in the Constitution and the history of our courts. We determine that under the judicial article adopted in the 1876 Constitution at the same time as section 23, justice of the peace courts ("justice courts") were the only courts created in the Constitution that were considered "not of record." Consequently, it was clear until 1962 that the right to a jury of twelve did not extend to justice courts because it was well known that justice courts were courts not of record. In contrast, the right did extend to county and district courts because those courts were of record.

However, justice courts were eliminated in the constitutional reorganization of the justice system in 1962. Because the justice courts were eliminated and their jurisdiction combined with the county courts in 1962, and given that there was no consideration of the impact on the right to a jury of twelve under section 23, the usefulness of the term "courts not of record" as it relates to the extent of the right to a jury of twelve pursuant to section 23, was lost.

Because we are faced with determining the rights afforded by section 23 after the judicial reorganization, we must try to preserve the original intent of section 23. In doing so, we find that the best approach to preserving the right to a jury trial under section 23 is to identify the types of cases the framers envisioned for justice courts—"courts not of record"—and county and district courts— "courts of record"—and, as a result, determine the types of cases where the framers protected the right to a jury of twelve.

By looking to the jurisdiction of these courts as provided by the Constitution and General Assembly, we find that the right to a jury of twelve lies in the difference between misdemeanor and felony offenses. That is, we find a right to a jury of twelve in felony cases that does not extend to misdemeanor cases. Thus, we conclude that section 18–1–406(1) and Crim. P. 23, which provide for six jurors in misdemeanor cases, are constitutional under section 23.

## 1. Section 23 applied prior to 1962

From inception in 1876, section 23 provides an accused the right to a jury of twelve in "courts of record" and a limited exception exists whereby juries may be limited to fewer than twelve jurors in "courts not of record." At the outset, however, it is important to note that courts of record have historically had several defining characteristics.

To be a court of record, it is clear that the court had to keep a record of its proceedings. *Hoehne v. Trugillo,* 1 Colo. 161, 162 (Colo. Terr.1869). Often times, this required much more than the docket indicating court actions. *Id.* However, simply because a court kept a record did not make it a "court of record." *See Filson,* 98 Wash.2d at 70, 653 P.2d at 611; *State v. Allen,* 117 Ohio St. 470, 475, 159 N.E. 591, 592 (1927). Courts of record were generally courts of general jurisdiction that typically conduct their proceedings in accordance with the common law. *See, e.g., Bucher v. Thompson,* 7 N.M. 115, 32 P. 498, 498 (1893). Conversely, courts not of record were inferior courts of limited jurisdiction that depended upon legislative action for their jurisdiction. *See, e.g., Lopez v. Anchorage,* 597 P.2d 146, 147–48 (Alaska 1979). Essential to being a court of record was the ability to fine and imprison as well as the ability to hold a party in contempt. *See People v. Stapleton,* 18 Colo. 568, 582, 33 P. 167, 171 (1893) ("jurisdiction to punish for contempt is inherent in superior courts of record"). It is also observed that the orders or judgments of courts of record carry "absolute verity" subject only to collateral attack. *See Filson,* 98 Wash.2d at 69–70, 653 P.2d at 610; *see also In re Brown's Estate,* 65 Colo. 341, 347, 176 P. 477, 479 (1918).

There are so many defining characteristics that several authors have noted the difficult task of distinguishing between courts of record and courts not of record. *See* Margreth Barrett, *The Constitutional Right to Jury Trial: A Historical Exception for Small Monetary Claims,* 39 Hastings L.J. 125, 163 n. 155 (1987) (discussing the inevitable problem of associating lesser jury trial rights to "courts not of record" and concluding that

the distinction from "courts of record" has never attained a "universal meaning"); 20 Am.Jur.2d *Courts* § 26, at 405 (1965) ("There are conflicting opinions on the principle behind" the court of record classification making it "practically impossible to give a universally valid definition of the term."); Arthur M. Alger, *What is a Court of Record?*, 34 Am. L.Rev. 70 (1900) (noting that "what constitutes a court of record has never been satisfactorily answered"); *see also Filson*, 98 Wash.2d at 69, 653 P.2d at 610 (noting that "[t]he expression 'court of record' is not one of fixed meaning.") (citing *Black's Law Dictionary* 425–26 (rev. 4th ed.1968)). Where constitutions have defined rights and powers upon the "court of record" and "court not of record distinction," several courts have been challenged to construe and apply them. *See, e.g., Filson*, 98 Wash.2d at 69, 653 P.2d at 610; *Allen*, 117 Ohio St. at 473–80, 159 N.E. at 591–93 (court attempts to determine if justice of the peace is "court of record" within meaning of state constitution).

In Colorado, the 1876 Constitution did not define what the framers meant by "courts not of record" or "courts of record" in section 23 or in any other provision. Prior to the adoption of the 1876 Constitution, the Territorial Court of Colorado offered the historical perspective: "A court of record is that where the acts and judicial proceedings are enrolled in parchment for a perpetual memorial and testimony; which rolls are called the record of the court, and are of such high and super-eminent authority that their truth is not to be called in question." *Hoehne*, 1 Colo. at 162 (internal quotations omitted). The court went on to say that "[i]n these days the parchment is discarded, but records still retain their character as a judicial memorial of high and super-eminent authority." *Id.* More recently, although prior to 1962, this court took notice that courts not of record are those courts of limited jurisdiction without the inherent powers of courts of record such that their jurisdiction and duties are derived only from statute. *Mahaney v. Field*, 120 Colo. 518, 521, 211 P.2d 827, 829 (1949).

Despite the lack of a universally-accepted meaning, the distinction in Colorado between courts of record and courts not of record was clear for the first 80 years of our Constitution because it was well understood which of Colorado's trial courts were courts of record. The district courts and county courts were both courts of record. *See Laizure v. Baker*, 91 Colo. 48, 50–51, 11 P.2d 560, 561 (1932) (district courts are courts of record); *Weiss–Chapman Drug Co. v. People*, 39 Colo. 374, 376, 89 P. 778, 779 (1907) (district court is a superior court, a court of record); *Herren v. People*, 147 Colo. 442, 444, 363 P.2d 1044, 1046 (1961) (county court is a court of record); *see also* § 37–1–12, 2 C.R.S. (1953) (identifying courts of record). In contrast, the justice courts were "courts not of record." *See Mahaney*, 120 Colo. at 521, 211 P.2d at 829; *Hamill v. Ferrier*, 8 Colo.App. 266, 270–71, 45 P. 522, 523 (1896).

Accordingly, under section 23, because district and county courts were courts of record, the General Assembly could not provide for fewer than twelve jurors in criminal cases in district and county courts. *See* § 78–2–14, 4 C.R.S. (1953) (identifying twelve as the maximum number of jurors). Conversely, because justice courts were courts not of record, there was no limit on the General Assembly to provide for fewer than twelve jurors in criminal cases in those courts. *See* § 79–15–4, 4 C.R.S. (1953) (designating a maximum of six jurors in trials before justice court). That is, a jury of twelve was not required in any justice court case because, as at least one treatise of that period notes, this was "permitted by the constitution . . . ." *Colo. Justice Court Practice and Procedure* § 411 (3d ed.1942).

Because the General Assembly could provide for fewer than twelve jurors in justice courts, defendants in cases before justice courts had no constitutional right to a jury of twelve. In addition, when the Constitution was framed in 1876, the jurisdiction of justice courts was not embodied in the text of the Constitution, but instead was left to the General Assembly. *See* Colo. Const. art. VI, sec. 25 (1876). As such, the General Assembly had the power to give jurisdiction to the justice courts over several types of offenses and, as a result, defendants prosecuted in

justice courts on these offenses did not have a right to a jury of twelve.

Historically, justice courts only had jurisdiction over minor civil matters and "assault, assault and battery, and affrays." 1861 Colo. Terr. Sess. Laws 220, 220–22. However, because the General Assembly's power to grant jurisdiction over minor criminal matters was unrestricted by the 1876 judicial article, by 1886 the General Assembly had extended justice court jurisdiction to several misdemeanors. Misdemeanor cases could be initiated by complaint or information and, therefore, it was permissible for the General Assembly to grant jurisdiction over misdemeanors to justice courts. *See In re Constitutionality of House Bill No. 158,* 9 Colo. 625, 626, 21 P. 472, 472 (1886); *see also* Colo. Const. art. II, sec. 8 (1876) (all non-felony criminal cases may be prosecuted by indictment or information).

In comparison, because felonies required an indictment by a grand jury, *see* Colo. Const. art. II, sec. 8 (1876), felony cases could not be heard in justice courts because there was no mechanism for initiating a grand jury indictment in the justice courts.[12] *See House Bill No. 158,* 9 Colo. at 626, 21 P. at 472; *see also* Legislative Council of the Colo. Gen. Assembly, *Judicial Administration in Colorado* 10 (Research Publ'n No. 49, 1960) (hereinafter *"Judicial Administration"*). Instead, the justice courts role in felony cases was limited to preliminary examinations. *See Colo. Justice Court Practice and Procedure* §§ 380–81 (3d ed.1942); Legislative Council of the Colo. Gen. Assembly, *Justice Courts in Colorado* at 6–7 (Research Publ'n No. 24, 1958) (hereinafter *"Justice Courts in Colorado"*).

In 1923, the General Assembly extended the jurisdiction of the justice courts to nearly all misdemeanors offenses. Ch. 138, sec. 1, 1923 Colo. Sess. Laws 403, 403; *Justice Courts in Colorado* at 3. Twenty years later, the justice courts' jurisdiction over misdemeanors encompassed over 80 offenses. *Colo. Justice Court Practice and Procedure* § 46 n. 10 (3d ed.1942). But justice courts

were never given jurisdiction over felony offenses. *See Justice Courts in Colorado* 1–3.

Given this history, it is clear that prior to 1962 the Constitution permitted the General Assembly to define the jurisdiction of justice courts and the concomitant ability to provide for a jury of less than twelve in any case in which it authorized such jurisdiction. Using its power to do so, the General Assembly gave the justice courts jurisdiction over all misdemeanor cases and provided for a jury of fewer than twelve. § 79–15–3 and § 79–15–4, 4 C.R.S. (1953). At the same time, felonies were restricted to the jurisdiction of district courts, Colorado's only court of general jurisdiction, where the General Assembly was prohibited by section 23 from providing fewer than twelve jurors.

### 2. The 1962 Judicial Reorganization

In 1962, the people of Colorado voted to adopt a new judicial article reorganizing the state's judicial branch. *See* Legislative Council of the Colo. Gen. Assembly, *An Analysis of 1962 Ballot Proposals* 3–12 (Research Publ'n No. 61, 1962) (hereinafter *"Blue Book"*). Because the rights afforded by section 23 are tied to the judicial system established by the 1876 Constitution, the reorganization of the judicial system in 1962 complicates how we must apply the right to a jury of twelve.

The People contend that section 23 does not require a jury of twelve because the county court where Rodriguez was tried is a "court not of record" as contemplated by section 23. The People argue that under the 1962 amendment to article VI of the Colorado Constitution, county courts were not identified as "courts of record" and as such, must be considered "courts not of record." In contrast, Rodriguez relies on section 23 to support his position that he is entitled to a jury of twelve in county court because county courts are clearly "courts of record" as defined by section 13–1–111 and 13–6–102, C.R.S. (2004), and not the type of court contemplated as a "court not of record" when section 23 was adopted in 1876. Both of these arguments, however, attempt to apply

---

12. Similarly, the new judicial article prohibits the General Assembly from extending the jurisdiction of county courts to felony offenses. *See* Colo. Const. art. VI, sec. 17 (1962).

the "court of record" distinction of section 23 to the new judicial article adopted in 1962, when section 23 was specifically tailored and intended to apply to the judicial system prior to 1962.

This is problematic because neither the judicial system reorganization nor the General Assembly's choice in 1965 to designate county courts as "courts of record" were done with any intent to modify the right to a jury of twelve under section 23. If we were to adopt either the theory proposed by the People or the one proposed by Rodriguez, we would be applying the right to a jury of twelve differently from the right that existed prior to 1962, and, in effect, permitting the unintentional modification of a constitutional right.

The state judiciary was reorganized to refine the jurisdiction of the courts to improve the efficiency and uniformity of the administration of justice. *See Judicial Administration* at xv. One of the major components of the new judicial article was the elimination of the justice courts and the creation of a two-tier trial court system made up of district courts and county courts. *Blue Book* at 6.

Although the reorganization sought to eliminate justice courts—"courts not of record"—there is nothing in the history of the new judicial article to suggest that the changes were intended to affect section 23 or eliminate the General Assembly's right to provide for a fewer number of jurors in cases formerly within the jurisdiction of justice courts. *See Blue Book* (no reference to jury trial rights); *Judicial Administration* (report recommending reorganization by constitutional amendment does not discuss impact on right to a jury of twelve); Legislative Council of the Colo. Gen. Assembly, *Implementation of the New Judicial Article* (Research Publ'n No. 85, 1963) (hereinafter *"New Judicial Article"*) (legislative recom-

mendation for the implementation of the new judicial article does not address the jury trial rights); Harry O. Lawson, *Colorado's New Court System*, 41 Denver Ctr. L.J. 140 (1964) (review of the reorganized judicial system does not reference jury trial rights); Jim R. Carrigan, *The Present Status of Judicial Administration in Colorado*, 33 Rocky Mtn. L.Rev. 501 (1961) (in discussing 1962 constitutional amendment and pending changes to judicial system, there is no discussion of an impact on jury trial rights). In fact, if anything, there was an effort to preserve the flexibility of the county courts and give the General Assembly as much control over them as previously existed with the justice courts.[13] *See New Judicial Article* at 4 ("The new judicial article was designed to be sufficiently flexible" to permit the General Assembly to define the jurisdiction of the courts within the express limits set forth in the text of the new judicial article.).

One such component of flexibility was to remove the "court of record" designation of county courts from the new judicial article. This permitted the General Assembly to review and determine which courts it believed should be of record. *See New Judicial Article* at 7–12, 18. But again, there is no evidence this elimination of county courts as constitutionally designated courts of record was designed to give greater flexibility to the General Assembly to limit jury trial rights. Instead, it appears this change was intended to give the General Assembly the ability to address concerns raised about the diverse nature and different resources available to some of Colorado's rural courts to provide adequate transcriptions of proceedings. *See generally Judicial Administration* at 37. Likewise, the subsequent decision of the General Assembly in 1965 to designate county courts as courts of record was not intended to expand jury rights and give the right to a jury of twelve where it did not previously

---

13. *Compare* Colo. Const. art. VI, sec. 17 (1962) ("County courts shall have such civil, criminal, and appellate *jurisdiction as may be provided by law,* provided such courts shall not have jurisdiction of felonies or in civil cases where the boundaries or title to real property shall be in question. Appellate review by the supreme court or the district courts of every final judgment of the county courts shall be as provided by law." (em-

phasis added)) and Colo. Const. art. VI, sec. 25 (1876) ("Justices of the Peace shall have such *jurisdiction as may be conferred by law;* but they shall not have jurisdiction in any case wherein the value of the property or the amount in controversy exceeds the sum of three hundred dollars, nor where the boundaries or title to real property shall be called in question." (emphasis added)).

exist. Instead, it appears the designation was established to reduce the high number of trials de novo in the district courts. *See New Judicial Article* at 17–18. Otherwise, absent a record in the county courts, any appeal, if authorized by statute, had to be tried de novo. Neither the absence of a county court designation as a "court of record" in the new judicial article nor the General Assembly's subsequent designation of the county court as a "court of record" in 1965 was intended to modify the right to a jury of twelve.

If we were to rely solely on the absence of a "court of record" designation for county courts in the new judicial article as urged by the People, we would be forced to apply the right differently from the way it existed prior to 1962. The new judicial system combined the jurisdiction of the justice courts and county courts. *Blue Book* at 6. As a result of the reorganization, the new county courts assumed the jurisdiction of the justice courts. *Id.* The new county courts also retained much of its previous jurisdiction, with the exception of probate cases. *Id.* In effect, the new county courts encompassed two types of proceedings: "1) simple and more informal for minor cases (somewhat similar to present [1962] justice court proceedings); and 2) formal, more complex proceedings for more important cases (similar to [then-existing] county court proceedings)." *Id.* One court was previously a court of record where the right to a jury of twelve was protected, the other was not. Given that the new county court serves a dual role assuming the informal nature of the justice courts and the formal role of the former county courts, it is unclear where the right to a jury of twelve begins and the General Assembly's power to limit number of jurors ends. If we were to simply find that the new county courts are not courts of record, as the People suggest, we would in effect change the right afforded by section 23 where no change was intended.

Likewise, we also cannot look to the General Assembly's statutory designation of county courts as courts of record in 1965 as contended by Rodriguez. This designation was also not intended to modify the right to a jury of twelve. If we were to find that this statutory designation controls the right to a

jury of twelve, then we would be expanding the right to a jury of twelve in those types of cases that were previously tried before the justice courts where no right to a jury of twelve existed.

In addition, relying on the statutory designation of courts of record to apply section 23 would give the General Assembly the power to control the right to a jury of twelve by placing all of the rights afforded by section 23 within the discretion of the General Assembly. That is, if the right to a jury of twelve was tied to the General Assembly's designation of courts of record, the General Assembly would have the unrestricted power to change designation and therefore the ability to eliminate the right entirely. Given our discussion and finding in Part A. above that the framers sought to place a limit on the General Assembly's power to provide for fewer than twelve jurors, permitting the General Assembly to control the right to a jury of twelve through its power to designate courts of record would completely defeat the framers' intent to protect the right to a jury of twelve in the 1876 Constitution.

Therefore, it is apparent that by combining the justice and county courts' jurisdictions, our judicial system lost the distinction that existed prior to 1962 that enabled us to easily apply the right to a jury of twelve as it was intended by the framers. In attempting to retrofit the rights afforded by section 23 using the "court of record" and "court not of record" distinction, we would be changing the scope of the right without any intent to do so by the people of Colorado.

### 3. Section 23 applied after the 1962 reorganization

We are now left to determine how the right to a jury of twelve is best applied and the intent of section 23 is best preserved under our reorganized judicial system. We must look for a new defining characteristic which preserves the rights afforded by section 23 as it was intended by the framers and allows us to draw the line that divides the right to a jury of twelve and the General Assembly's power to provide for less than twelve. To do so, we look to the right as it existed from its inception in 1876 and the

types of cases where the right remained protected in light of the General Assembly's ability to define the jurisdiction of the justice courts—"courts not of record"—under the 1876 Constitution. In doing so, it becomes clear that the new dividing line lies in the distinction between misdemeanors and felonies.

As discussed above, the framers placed no safeguards or limitations in the 1876 Constitution to prevent the General Assembly from providing for juries of less than twelve in misdemeanor cases. Justice courts were given jurisdiction over nearly all misdemeanor offenses prior to the 1962 reorganization. At the same time, the General Assembly only provided for a maximum of six jurors in all justice court cases. Because the 1876 Constitution did not prohibit the General Assembly from providing less than twelve jurors in misdemeanor cases before the justice courts, by 1962 nearly all misdemeanor offenses were capable of being tried to a jury of less than twelve.

The framers of the Constitution, however, treated felonies differently. Since 1876, the Constitution has expressly defined felonies by providing "[t]he term felony, wherever it may occur in this constitution, or the laws of the state, shall be construed to mean any criminal offense punishable by death or imprisonment in the penitentiary, and none other." Colo. Const. art. XVIII, sec. 4. By constitutionally defining felonies, the framers distinguished between the less serious crimes such as misdemeanors and established that felonies were only those crimes serious enough to warrant incarceration in the state penitentiary. *See People v. Enlow*, 135 Colo. 249, 262–63, 310 P.2d 539, 546–47 (1957). "Disgrace and reproach" attached to a sentence in the state penitentiary given that is was known as the place for the most "depraved and infamous classes of offenders." *Brooks v. People*, 14 Colo. 413, 414, 24 P. 553, 553 (1890).

Because of the stigma attached to a felony charge and sentence to the state penitentiary, the framers retained the "time-honored institution" of the grand jury process for all

felony cases. *In re Lowrie*, 8 Colo. 499, 507, 9 P. 489, 494 (1886). The framers as well as the voters who adopted the Constitution recognized "the necessity for great caution on the part of the legislature when dealing with the subject" of grand jury indictments in felony cases, *id.* at 511, 9 P. at 496–97, and, although they envisioned that the system could one day be abolished, the framers required all felony prosecutions be initiated through the grand jury process. Colo. Const. art II, sec. 8 (1876). The process protected the accused from the serious repercussions of potential prosecutorial misconduct and required a minimum evidentiary basis for a felony charge to be initiated at all. *Id.* at 504, 9 P. at 492. The grand jury indictment, however, was not available in justice courts. *See id.* (noting that grand jury indictment "only recognized in prosecutions instituted in the district courts").

Felonies were also the only type of criminal offense that remained exclusively within the jurisdiction of district courts in 1962. Similar to the present-day district courts, district courts prior to the 1962 reorganization were Colorado's only trial courts of general jurisdiction. That is, because the constitution provided that "[t]he District Courts shall have original jurisdiction of all causes both at law and equity," district courts could hear any type of case without further action from the General Assembly. Colo. Const. art. VI, sec. 11. District courts were the only courts established by the Constitution that had the inherent power to sentence a person to the state penitentiary and, consequently, the only courts with the inherent ability to hear felony cases. *See, e.g., People v. Green*, 734 P.2d 616, 618 (Colo.1987). Although the General Assembly exercised its power to give lower courts jurisdiction over less serious matters, the General Assembly never gave the lower courts the power to sentence defendants to the state penitentiary or gave such courts jurisdiction over felony offenses. Thus, from 1876 through the judicial reorganization in 1962, the only courts that heard felony cases were the district courts—courts of record.[14] Under the

---

14. There is some indication that the General Assembly gave jurisdiction over certain felonies

to Criminal Courts. *See In re Lowrie,* 8 Colo. at 500, 9 P. at 490. Criminal Courts, however, like

framework of the 1876 Constitution and pursuant to the power of the General Assembly to define the jurisdiction of the lower courts, felony cases have always been tried in courts of record where the General Assembly was without the power to provide for fewer than twelve jurors.

It is evident that the framers treated felonies as significantly different from misdemeanors. The 1876 Constitution simply did not protect the right to a jury of twelve in misdemeanor cases under section 23. Felony cases, however, under the framework of the 1876 Constitution were never intended to be tried in courts not of record. As such, because felonies were only tried in courts of record, the General Assembly could not provide for fewer than twelve jurors in felony cases.

Accordingly, we conclude that section 23 prohibits the General Assembly from providing fewer than twelve jurors in felony cases. However, because the General Assembly had the power to reduce the number of jurors in misdemeanor cases prior to the reorganization, we find it constitutionally sound under section 23 for the General Assembly to designate less than twelve jurors in misdemeanor cases under our current judicial system. We believe this division between the right to a jury of twelve and the General Assembly's power to provide for a jury of less than twelve best preserves the intent of section 23 as it relates to our reorganized judicial system.

### C. Section 18–1–406(1) and Crim. P. 23(a)(2)

Our analysis to this point has been twofold. First, based on the history and text of the Colorado Constitution, section 23 establishes a right to a jury of twelve in some cases that may not be encroached upon by legislation or procedural rule. Next, because our understanding of the extent of the right to a jury of twelve under section 23 was lost in the 1962 judicial reorganization, the right is best preserved by giving effect to the intent of the framers of the Constitution. In doing so, we conclude that the right to a jury of twelve only extends to felony offenses and section 23 does not protect a right to a jury of twelve in

district courts, were also courts of record. *See*

misdemeanor cases as we understand them today. We now turn to the statute and procedural rule at issue here.

Both section 18–1–406(1) and Crim. P. 23(a)(2) provide that in cases involving only misdemeanors, "the accused is entitled to be tried by a jury of six." Because we find it constitutionally permissible to provide for fewer than twelve jurors in misdemeanor cases, we conclude that section 18–1–406(1) and Crim. P. 23(a)(2) are constitutional.

### III. Conclusion

The county court in this case relied upon both statute and the criminal rules of procedure to determine that Rodriguez was not entitled to a jury of twelve. We have determined that section 18–1–406 and Crim. P. 23 identify a constitutionally permissible number of jurors in misdemeanor cases. Thus, the district court sitting on appeal erred when it overturned the judgment of the county court. Accordingly, we reverse the decision of the district court and reinstate the judgment of the county court.

Justice COATS concurs in the judgment only.

Justice COATS, concurring in the judgment only.

Once again a majority of this court offers its opinion about the constitutional basis for 12–person juries, maj. op. at 694–702; *see People v. Burnette*, 775 P.2d 583, 589 n. 6 (Colo.1989); *People ex rel. Hunter v. Dist. Court*, 634 P.2d 44, 46 (Colo.1981), this time, however, opining that the state constitution actually does provide felony defendants with such an entitlement. In light of its holding that misdemeanor prosecutions must, by their very nature, fall within an exception for "criminal cases in courts not of record," and therefore that misdemeanor defendants would not be constitutionally entitled to 12–person juries in any event, the majority's broader conclusion about the number of jurors implied by the phrase "trial by jury" is clearly unnecessary to its holding and can only be characterized as an elaborate dictum.

*id.* at 505, 9 P. at 493.

If I agreed with the majority's construction of the express provision for "courts not of record," I would be content not to reach out for this difficult question, which the General Assembly has avoided forcing upon us since we became a state. Because I agree, however, with neither the majority's conclusion that the term "courts of record" was intended to refer to crimes punished a certain way rather than to courts affording a certain kind of process in prosecuting them; nor its opinion that a constitutional entitlement to a jury of 12 in felony prosecutions is implied, even though none specifically appears in the constitution, I would hold that nothing in our constitution bars the Colorado General Assembly from prescribing an appropriate number of jurors for trials in courts of record any more than in courts not of record.

In *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the United States Supreme Court addressed at length the question whether the 12–man requirement of common-law juries was an "indispensable component of the Sixth Amendment," and whether it was the "intent of the Framers ... to equate the constitutional and common-law characteristics of the jury." Characterizing the composition of the 12–man common-law jury as "a historical accident," and as "wholly without significance 'except to mystics,'" the Court held that "[t]o read the Sixth Amendment as forever codifying a feature so incidental to the real purpose of the Amendment is to ascribe a blind formalism to the Framers which would require considerably more evidence than we have been able to discover in the history and language of the Constitution." *Id.* at 102–03, 90 S.Ct. 1893. The Supreme Court therefore held not only that the 12–man requirement was not an "essential feature" of the right to a jury trial, such as to require its incorporation in the due process clause of the Fourteenth Amendment, but that it was not even included in the federal Sixth Amendment.

Prior to *Williams,* the prevailing presumption (often with little support) was clearly that constitutional provisions preserving inviolate the right to a jury trial included a requirement that the jury consist of 12 members. Since *Williams,* a handful of state courts have considered the question, several agreeing with the Supreme Court, *see In re Public Law No. 305 and Public Law No. 309 of the Indiana Acts of 1975,* 263 Ind. 506, 334 N.E.2d 659 (1975); *Pitcher v. Lakes Amusement Co.,* 236 N.W.2d 333 (Iowa 1975), and several others, usually in reliance upon their own pre-*Williams* holdings, disagreeing, *see Byrd v. State,* 317 Ark. 609, 879 S.W.2d 435 (1994); *Blum v. Merrell Dow Pharm., Inc.,* 534 Pa. 97, 626 A.2d 537 (1993); *Brame v. Garwood,* 339 So.2d 978 (1976); *Gilbreath v. Wallace,* 292 Ala. 267, 292 So.2d 651 (1974); *Advisory Opinion to Senate of the State of Rhode Island and Providence Plantations,* 108 R.I. 628, 278 A.2d 852 (1971). The majority in this case does not dispute the Supreme Court's scholarship or challenge its conclusion that the 12–man requirement is not an essential feature of the right to a jury trial. Instead, relying on an additional provision in our constitution specifically permitting juries of fewer than 12 in certain enumerated situations, and on an 1860 Missouri Supreme Court case finding the right to a jury trial, as guaranteed in that state's constitution, to require a 12–person jury, the majority concludes that the framers of the Colorado Constitution intended to prohibit the general assembly from altering in any way the traditional number of jurors, except where expressly authorized by the constitution itself.

I disagree with the majority's inference of an intent on the part of the framers that juries necessarily consist of a specific number, derived entirely from examples demonstrating their willingness to allow otherwise. The single sentence upon which the majority's analysis hinges is: "The right of trial by jury shall remain inviolate in criminal cases; but a jury in civil cases in all courts, or in criminal cases in courts not of record, may consist of less than 12 persons, as may be prescribed by law." Colo. Const. art II, § 23. Awkwardly conjoined as these two independent clauses may be, they clearly are not related as a general rule and exceptions or provisos to it, as the majority suggests, but rather as separate propositions about the right to jury determinations in various civil and criminal proceedings. Permitting a jury of less than 12 persons in civil cases can by

no stretch of the imagination be considered an exception to the proposition that a right to trial by jury shall remain inviolate in criminal cases. Even with regard to criminal trials, the language chosen by the framers clearly does not preserve inviolate a right to 12–person jury trials in all but courts not of record. To the contrary, by preserving the right to jury trials in all criminal cases, which the first proposition clearly does, it could not implicitly include a 12–person limitation without openly conflicting with the second proposition, which just as expressly permits fewer jurors in some criminal cases.

The majority's forced construction rests primarily on its justification that unless the framers intended to limit criminal jury trials to 12 members, they had no need to mention any examples of proceedings permitting fewer jurors. But it is not uncommon, and clearly is rational, as a drafting technique to mention specific cases simply to insure clarity with regard to their inclusion or exclusion from a general category. It is no less legitimate or common to narrow a proscription by expressly providing examples that fall outside its boundaries than to define a proscription broadly and expressly provide exceptions that fall within its boundaries. Because undoubtedly the "usual expectation was that the jury would consist of 12," *Williams,* 399 U.S. at 96–100, 90 S.Ct. 1893, it would not have been unusual to feel the need to expressly ratify different practices already in use. Specifically noting cases in which juries of fewer than 12 were already accepted, however, is a far cry from intending to forbid all deviations from the 12–person jury model, except those expressly mentioned. Although it is likely that the framers of our constitution, precisely like those of the federal constitution, gave little thought to the question faced by the court today, *id.* at 102–03, 90 S.Ct. 1893, "there is absolutely no indication in 'the intent of the Framers' of an explicit decision to equate the constitutional and common-law characteristics of the jury," *id.* at 99, 90 S.Ct. 1893.

Perhaps because we had not attempted to resolve this question before the Supreme Court ruled in *Williams,* and to the extent that we had addressed the question since

*Williams,* we had opined that a 12–person jury was not a matter of constitutional necessity, *Burnette,* 775 P.2d at 589 n. 6 (Colo. 1989); *Hunter,* 634 P.2d at 46, the majority seeks to saddle us with Missouri precedent, on the grounds that because our constitutions contain somewhat similar provisions, the framers of our constitution must have intended to adopt Missouri's interpretive case law. *See* maj. op. at 24–25. The interpretive aid to which the majority refers can perhaps have merit when a statutory or constitutional provision is expressly borrowed from another jurisdiction with the intent of preserving its application in toto, but when provisions are merely similar or come from a common source, much less where a borrowed provision has been amended in material part, the interpretive aid has little, if any, value. The majority suggests that our framers intended to adopt pre-civil war case law from Missouri, interpreting that state's 1820 constitution, thrice removed from its 1875 constitution, which the majority finds similar in key respects to our own, because in 1978, more than a century after the adoption of our constitution, the Missouri Supreme Court held that the pertinent provision of the 1875 constitution, although substantially different in language, did not intend to overrule case law construing the term "trial by jury," in the 1820 constitution, to mean trial by a jury of 12. Perhaps most ironic in this chain of reasoning, the case law our framers purportedly sought to adopt from Missouri, *Vaughn v. Scade,* 30 Mo. 600 (1860), interpreted its constitution as preserving the right to 12–person jury trials in civil cases, while our own constitution expressly permits fewer than 12–person juries in civil cases, in a provision we have construed to guaranty no right to civil jury trials at all. *Scholz v. Metro. Pathologists, P.C.,* 851 P.2d 901, 906 (Colo.1993).

With regard to the majority's dicta on felonies, as well as its holding on misdemeanors, I would be guided more by the language actually chosen by the framers. On the one hand, the majority finds a constitutional limitation on the power of the legislature solely from words of permission; and on the other, it expands those same words of permission to include misdemeanor cases tried in the coun-

ty courts, which cannot possibly be derived from the constitutional language itself. Ironically, with respect to the question actually before us—whether the defendant was entitled to demand a 12-person jury for his misdemeanor trial—the answer would have been the same had the majority merely applied the language of the constitution as it was written. By ascribing to the framers an intent to incorporate as constitutional limitations at least some of the traditional (if mundane) incidents of a common-law jury, the majority all but strikes down the general assembly's attempt to avoid mistrials upon the dismissal of a juror for cause during deliberations; *see* § 18–1–406(7), C.R.S. (2004); and I believe needlessly ties its hands with regard to the practical development of the jury system in criminal prosecutions.

Therefore, I respectfully concur in the judgment only.