The PEOPLE of the State of
Colorado, Petitioner,

v.

Dexter C. WELLS, Respondent.

No. 88SC93.

Supreme Court of Colorado,
En Banc.

July 17, 1989.

---

6. Because we are remanding the case for a hearing, the court of appeals award of appellate attorney fees is also reversed.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Robert M. Petrusak, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, State Public Defender, and Forrest W. Lewis, Sp. Deputy State Public Defender, Denver, for respondent.

KIRSHBAUM, Justice.

The People seek review of the decision of the Court of Appeals in *People v. Wells,* 754 P.2d 420 (Colo.App.1987), wherein the court reversed judgments of conviction entered against defendant Dexter C. Wells for the offenses of kidnapping and sexual assault on the ground that the trial court erroneously denied the defendant's motion for a continuance and for a transcript of prior judicial proceedings. We reverse.

**I**

On December 15, 1984, the victim and her mother went Christmas shopping at a Colorado Springs shopping center. They arrived at approximately 9:15 a.m. After shopping for fifteen to twenty minutes, the victim, a twenty-year-old college student, returned to the car to deposit some packages.

As the victim approached her car, she noticed a four-door brown station wagon with wooden panels parked closely behind her car. A man sitting in the driver's seat of the car got out of the car, stretched, and remarked, "Oh, its cold out here." The victim looked at the man and replied, "Yeah, but at least it's not snowing."

As she was unlocking the car door, a man came up behind her, put his hand on her arm and placed a knife against her rib cage. The man told her not to yell or scream. The victim turned and recognized the man behind her as the man from the brown station wagon with whom she had just spoken.

The assailant placed the victim in the back seat of the station wagon, took her car keys, tied her hands and feet, placed a pillowcase over her head, put her on the floor and covered her with a blanket. He then drove for a short period of time, stopped the car, and stated that he had not decided whether he was going to kill her. He took her outside of the car, removed the pillow case and placed duct tape over her eyes.

The assailant then placed the victim back into the car, drove to a second location, and forced her to perform fellatio on him and to submit to anal intercourse. The assailant then took the victim to a field and commented again that he should kill her. Although the victim heard the click of a knife, the assailant untied her hands, told her not to take off the tape and said that he would leave her car keys on the dashboard of her car.

After the assailant drove away, the victim removed the tape and walked to a nearby street. Neil Parks observed her,

stopped his vehicle and drove her to the shopping center. They arrived at approximately 10:20 a.m., and the victim suddenly observed a brown station wagon resembling the one driven by the person who had assaulted her. She recognized the driver as her assailant, pointed him out to Parks and recorded the car's license plate number.

The victim reported the incident to Colorado Springs police officials and gave the officers the duct tape that she had removed from her eyes. She also described her assailant to a police detective. The only item missing from her car was $10; the car keys were on the dashboard.

Later that day police officials located a 1977 station wagon with a license plate matching the number recorded by the victim parked at a Colorado Springs residence. Several officers kept the house under surveillance until the defendant, who matched the victim's description, came out of the house. Pursuant to the defendant's consent, the officers searched the residence and seized a pocket knife. Later, pursuant to a warrant, police officials searched the station wagon and seized a pair of leather-type work gloves, gray duct tape and a multicolor bedspread.

On December 16, 1984, the victim identified the defendant as her assailant from a photographic lineup presented to her by police officials. She and Parks later identified the defendant at a live lineup.

On January 2, 1985, an information was filed against the defendant in El Paso County District Court. It alleged the following counts: (1) second degree kidnapping, in violation of section 18–3–302, 8 C.R.S. (1978 & 1984 Supp.); (2) first degree sexual assault, in violation of section 18–3–402, 8 C.R.S. (1978 & 1984 Supp.); (3) aggravated robbery, in violation of section 18–4–302, 8 C.R.S. (1978 & 1984 Supp.); and (4) crime of violence, in violation of section 16–11–309, 8 C.R.S. (1978 & 1984 Supp.). On February 27, 1985, the information was amended to add four additional counts alleging that the defendant was a habitual criminal, in violation of section 16–13–101, 8 C.R.S. (1978 & 1984 Supp.). One of those counts was later dismissed.

The trial court subsequently granted the defendant's motion for transcripts of the criminal proceedings underlying the remaining three habitual criminal counts. A preliminary hearing was conducted on February 7, 1985, and the trial court granted the defendant's motion for a transcript of that hearing.

The defendant's trial commenced on June 3, 1985. On June 5, 1985, the jury found the defendant guilty of all counts, including the three habitual criminal counts. On June 17, 1985, the defendant filed a motion for judgment of acquittal or in the alternative a new trial. On July 5, 1985, the trial court granted the motion for new trial and set a new trial date of July 15, 1985.[1] The defendant then moved for a continuance of the trial date and for a transcript of the trial proceedings.[2] The trial court denied the motion that day.

The second trial commenced on July 15, 1985. On July 16, 1985, the jury returned verdicts finding the defendant guilty of all offenses with the exception of the offense of aggravated robbery. On August 6, 1985, the trial court sentenced the defendant to life imprisonment.

On appeal, the Court of Appeals reversed the jury convictions and remanded the case for a third trial on the ground that the trial court's failure to grant the defendant's motion to continue the date of the second trial and to obtain a transcript of the first trial constituted reversible error. The Court of Appeals also held that the trial court erred in failing to sustain the defendant's objections to certain similar transaction evidence, but concluded that the error was harmless.

## II

It is no doubt true that when a mistrial has been declared a transcript of

---

1. The trial court concluded that it had erred in advising the defendant concerning his right to testify in his own behalf.

2. The record contains no copy of the motion itself and contains no transcript of any oral motion.

prior trial proceedings would aid a defendant in preparing for the new trial.[3] Portions of such a transcript might well provide means for impeachment of prosecution witnesses. *See Britt v. North Carolina,* 404 U.S. 226, 227–28, 92 S.Ct. 431, 433–34, 30 L.Ed.2d 400 (1971); *Gonzales v. District Court,* 198 Colo. 505, 506–07, 602 P.2d 857, 858 (1979). However, an indigent defendant in criminal proceedings does not have an absolute right to a transcript of a prior trial. *See Medina v. District Court,* 189 Colo. 516, 517, 543 P.2d 62, 63 (1975). The state must provide an indigent defendant with a transcript of prior proceedings only when the transcript is necessary to prepare an effective defense or to perfect an appeal. *Id.; United States v. Germany,* 613 F.2d 262, 263 (10th Cir.1979). Two factors have been identified as relevant to a determination of such need: (1) the value of the transcript to the defendant in connection with the proceeding for which it is sought; and (2) the availability of alternative devices that would fulfill the same functions as a transcript. *Britt,* 404 U.S. at 227, 92 S.Ct. at 433. The state has the burden of demonstrating that an alternative will suffice. *Id.; People v. Sanchez,* 622 P.2d 604, 605 (Colo.App.1980).

■ A motion for continuance, on the other hand, is addressed to the sound discretion of the trial court and the trial court's ruling will not be disturbed in absence of an abuse of discretion. *People v. Hampton,* 758 P.2d 1344, 1353 (Colo.1988); *People v. Mann,* 646 P.2d 352, 358 (Colo. 1982). In determining whether the trial court abused its discretion, the total circumstances as reflected by the record must be taken into account. *Miller v. People,* 178 Colo. 397, 400, 497 P.2d 992, 993 (1972).

In its decision, the Court of Appeals stated that "[t]he only reason for denying the continuance was the resulting delay necessary to prepare a transcript." It also stated:

Here, the trial court's failure to grant the continuance denied defendant the opportunity to prepare properly for trial. Identity [of the assailant] was the sole issue at trial, and the People's case relied heavily upon the victim's identification testimony. Her recall of the encounter and her testimony regarding the People's evidence provided the basis of the prosecution. Therefore, under these circumstances, a transcript of the prior mistrial would have been a valuable preparation tool for the defendant.

*People v. Wells,* 754 P.2d 420, 421 (Colo. App.1987) (citation omitted).

■ The record on appeal contains neither the defendant's motion nor any transcript of any trial proceedings directed to consideration of the motion. The record contains no other evidence to support a conclusion that delay caused by the time necessary to prepare a transcript was the sole reason for the trial court's denial of the defendant's motion. The only reference in the record to the motion for continuance and for a transcript, other than a reference in the defendant's motion for judgment of acquittal or new trial filed July 18, 1985, after the conclusion of the second trial, is the trial court's minute order of July 5, 1985, which states, "DEF MOTN FOR TRANSCRIPT/AND CONT— DENIED."

In this state of the record, an appellate court can only speculate as to the reasons for the trial court's decision. The motion itself may have been too general or otherwise deficient,[4] or the trial court may have

---

3. The prosecution would also no doubt benefit from such a transcript.

4. A determination that a defendant is indigent and entitled to the appointment of counsel without cost does not automatically establish that the defendant is entitled to a free transcript. *People v. Church,* 192 Colo. 488, 490, 560 P.2d 469, 470 (1977); *Medina v. District Court,* 189 Colo. 516, 517, 543 P.2d 62, 63 (1975). In this case, the trial court initially determined that the defendant was partially indigent and appointed

counsel for him. Later the trial court granted the defendant's request for free transcripts of the proceedings underlying the habitual criminal counts and of the preliminary hearing held in this case. However, nothing in the record indicates that the trial court found Wells to be an indigent for purposes of receiving a free transcript of the first trial. The Court of Appeals noted the presence of this issue but determined that it could be addressed on remand if necessary.

determined that alternatives other than a complete transcript of all trial proceedings would suffice. What is certain is that the record contains no information to sustain the defendant's assertion that the trial court erred in denying his motions.

It is the defendant's responsibility to designate the record on appeal, including such parts of the trial proceedings as are necessary for purposes of the appeal, and to ensure that the record is properly transmitted to an appellate court. C.A.R. 10(b), (c); *People v. Thompson*, 770 P.2d 1282, 1283 n. 1 (Colo.1989); *People v. Velarde*, 200 Colo. 374, 375, 616 P.2d 104, 105 (Colo. 1980). Any facts not appearing of record cannot be reviewed. *McConnell v. People*, 157 Colo. 235, 238, 402 P.2d 75, 76 (Colo. 1965). The presumption is that material portions omitted from the record would support the judgment. *See People v. Cram*, 180 Colo. 418, 419, 505 P.2d 1299 (1973); *Heald Inv. Co. v. Globe Nat'l Bank*, 81 Colo. 63, 65–66, 255 P. 451, 452 (1927). In the present case, the record is insufficient to permit the conclusion that the trial court's judgment was erroneous. We therefore reverse the ruling of the Court of Appeals.

### III

The People assert that the Court of Appeals erred in determining that the trial court improperly admitted similar transaction evidence. However, the Court of Appeals also determined that the admission of this evidence did not constitute reversible error, and the defendant has not challenged that ruling by cross-appeal. Therefore, we do not address this argument.

### IV

The judgment of the Court of Appeals is reversed.

ERICKSON, J., does not participate.