In the Matter of the TITLE, BALLOT TITLE, SUBMISSION CLAUSE, and SUMMARY ADOPTED APRIL 5, 1995, by the TITLE BOARD PERTAINING to a PROPOSED INITIATIVE "PUBLIC RIGHTS IN WATERS II."

Richard D. MACRAVEY, Ralph Adkins, Fred V. Kroeger, Fred E. Anderson, Rodney F. Kuharich, and Buford F. Rice, Petitioners,

v.

Richard G. HAMILTON and Jeanne W. Englert, Proponents–Respondents,

and

Title Board; Honorable Victoria Buckley, Stephen Erkenbrack, and Rebecca Lennahan, members of said board, Respondents.

No. 95SA121.

Supreme Court of Colorado, En Banc.

June 30, 1995.

As Modified on Denial of Rehearing July 31, 1995.

Fairfield & Woods, P.C., Stephen H. Leonhardt, Jacalyn W. Peter, Denver, for petitioners.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Gen. Legal Services Section, Denver, for respondents.

Richard G. Hamilton, Shawnee, pro se.

Justice MULLARKEY delivered the Opinion of the Court.

The petitioners bring this original proceeding under section 1–40–107(2), 1B C.R.S. (1994 Supp.) to review action taken by the initiative title setting board ("the Board") which fixed a title, ballot title and submission clause, and summary (collectively, "Titles and Summary") for a proposed constitutional amendment designated "Public Rights in Water II" (the "Initiative"). We hold that the Initiative violates the single subject requirement applicable to initiatives under Article V, Section 1(5.5) of the Colorado Constitution, and, accordingly, we reverse the action of the Board.

## I.

The Initiative seeks to add four new paragraphs to Article XVI, Section 5 of the Colorado Constitution.[1] The paragraph numbered (1) currently appears in the Colorado Constitution; paragraphs (2) through (5) are new material which would be added by the Initiative. Paragraph (2) mandates the adoption and defense of a "strong public trust doctrine" regarding Colorado waters. Paragraph (3) requires water conservancy and water conservation districts to hold elections to change their boundaries or discontinue their existence. Paragraph (4) requires the same districts to hold elections for directors. Paragraph (5), like paragraph (2), concerns the public trust doctrine and describes dedication of water right use to the public.

The petitioners argue that the Board's action should be set aside because: it encompasses more than one subject; the Board did not effectively explain the meaning of "strong public trust doctrine;" and the Board failed

1. The Initiative provides as follows:
 Be it enacted by the people of the State of Colorado that Section 5 of Article XVI of the Constitution of the State of Colorado is amended to read:
 Article XVI Section 5. Water of Streams of Public Property.
 (1) The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.
 (2) That on and after January 1, 1997, the State of Colorado adopt and defend a strong public trust doctrine regarding the public's rights and ownerships in and of the waters in Colorado; and that the public further requires that the State of Colorado protect and defend the public's interests in waters from unwarranted or otherwise narrow definitions of its waters as private property; but, however, that the rights of the uses of waters by the manner of appropriation not be hereinunder denied.
 (3) Additionally, any change in the boundaries of a water conservancy district or a water conservation district, or any proposal regarding the continued existence of a water conservancy district or a water conservation district, must receive the approval of the majority of the statutorily qualified electors of that district's voters who actually cast ballots at an election regarding such issues.
 (4) Additionally, all directors of water conservancy districts and water conservation districts shall be elected to those directorships in a manner similar to the election of directorships for other Colorado special districts. Water conservancy districts and water conservation districts shall include those political subdivisions authorized by statute as such prior to the effective date of this section, and any and all governmental subdivisions of substantially similar purpose and function of either type of district which may be created either statutorily or constitutionally hereafter.
 (5) Additionally, any ownership in the rights of use of waters may be decreed to the public with the understanding that such decreed water use right shall be dedicated to the benefit of any stream or watercourse or to any lentic water body for the benefit and use of that system without hindrance from a state of Colorado or other governmental body. It is further provided here that the Colorado Water Conservation Board, or any governmental subdivision of a substantially similar purpose and function which may be created either statutorily or constitutionally hereafter, must accept and protect said public ownership and dedication from transfer from the public's ownership, or from transfer from the water system to which that decree was dedicated. It is specifically enacted here that any and all dedications of decreed waters to the uses of streams and waters and lakes shall be defended by Colorado government as an element in the matter of Colorado's public trusts in waters.

to explain the Initiative's fiscal impacts. We hold that the Initiative encompasses more than one subject and is unconstitutional. Therefore, we do not reach the other issues raised by the petitioners.

## II.

■ The petitioners argue that the Board should not have set the Titles and Summary because the Initiative encompasses more than one subject. We agree.

The single subject requirement for initiatives is a new constitutional provision added by Article V, Section 1(5.5) of the Colorado Constitution, which states:

No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

The General Assembly referred this constitutional amendment to the voters as Referendum A on the 1994 general election ballot.[2] It was approved and became effective upon proclamation by the Governor. *See* Senate Concurrent Resolution 93–4, 1993 Colo.Sess. Laws 2152.[3] In 1994, contingent upon voter approval of the proposed constitutional amendment, the General Assembly enacted

legislation to explain its rationale for proposing the amendment and to define the scope and purpose of imposing the single subject requirement on initiated and referred measures. *See* § 1–40–106.5, 1B C.R.S. (1994 Supp.). The statute notes that the single subject requirement limits the scope of any initiative to a single subject which must be clearly expressed in its title. § 1–40–106.5(1)(a), 1B C.R.S. (1994 Supp.). According to the express legislative intent, "in setting titles pursuant to Section 1(5.5) of Article V, the initiative title setting review board created in section 1–40–106 should apply judicial decisions construing the constitutional single subject requirement for bills and should follow the same rules employed by the general assembly in considering titles for bills." § 1–40–106.5(3), 1B C.R.S. (1994 Supp.).[4]

■ The requirement that an initiative be limited to a single subject is intended to ensure that each proposal depends upon its own merits for passage. § 1–40–106.5(1)(e)(I), 1B C.R.S. (1994 Supp.); *see also In re House Bill No. 1353*, 738 P.2d 371, 372 (Colo.1987) (interpreting the single subject requirement for bills). In furtherance of this purpose, the single subject requirement forbids the joining of "incongruous subjects in the same measure." § 1–40–106.5(1)(e)(I).

■ In order to constitute more than one subject under our caselaw pertaining to bills, the text of the measure must relate to more than one subject and it must have at least two distinct and separate purposes which are not dependent upon or connected

2. Prior to the amendment's enactment, an initiated measure could contain as many or as few subjects as its proponents chose to include. In fact, a virtually identical initiative to the one presently before us was proposed before enactment of the single subject requirement. *See In re Proposed Initiative on Water Rights*, 877 P.2d 321 (Colo.1994). We upheld the action of the Board but the initiative did not appear on the 1994 ballot. By approving the single subject requirement proposed in Referendum A, the voters have limited the power of initiative reserved to the people by Article V, Section 1 of the Colorado Constitution.

3. The same constitutional amendment also amended Article XIX, Section (2) to impose a single subject requirement on constitutional

amendments referred by the General Assembly. As the discussion in the text makes clear, this case concerns an initiative only.

4. The single subject requirement for bills appears in Article V, section 21 of the Colorado Constitution as follows:

**Section 21. Bill to contain but one subject—expressed in title.** No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title; such act shall be void only as to so much thereof as shall not be so expressed.

Colo. Const. art. V, § 21 (1980 Repl.Vol.).

with each other. *People v. Sours,* 31 Colo. 369, 403, 74 P. 167, 177 (1903) (quoting *State ex rel. Hudd v. Timme,* 54 Wis. 318, 11 N.W. 785 (1882)); *see also* § 1–40–106.5(1)(e)(I); *Catron v. County Comm'rs,* 18 Colo. 553, 557, 33 P. 513, 514 (1893). Thus, if the initiative tends to effect or to carry out one general object or purpose, it is a single subject under the law. *See Sours,* 31 Colo. at 404, 74 P. at 178 (quoting *Timme,* 54 Wis. at 318, 11 N.W. at 785); *People v. Goddard,* 8 Colo. 432, 436, 7 P. 301, 304 (1885).

 The reasoning underlying the single subject requirement was first articulated in *Catron* :

> In considering this constitutional provision [the single subject requirement for bills] it is important to bear in mind the evils sought to be corrected thereby. The practice of putting together in one bill subjects having no necessary or proper connection, for the purpose of enlisting in support of such bill the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits, was undoubtedly one of the evils sought to be eradicated.

18 Colo. at 557, 33 P. at 514. The same reasoning was used to support passage of the single subject requirement for initiatives. According to the Legislative Council's Analysis of 1994 Ballot Proposals, Research Publication No. 392 at 3, the single subject requirement now embodied in Article V, Section 1(5.5), would prevent proponents from engaging in "log rolling" or "Christmas tree" tactics.[5] The "evil" sought to be prevented is the same as that identified in *Catron.* That is, the single subject requirement precludes the joining together of multiple subjects into a single initiative in the hope of attracting support from various factions which may have different or even conflicting interests. Article V, Section 1(5.5) also requires that the single subject be "clearly expressed" in the ballot title. Again, this requirement parallels the same requirement in Article V,

Section 21, concerning the single subject requirement for bills and is intended to prevent voter surprise or uninformed voting caused by items concealed within a lengthy or complex proposal. Amendment 1, approved by the voters in the 1992 general election and now codified as Article X, section 20 of the Colorado Constitution, is cited by the Legislative Council as the example of an initiative which might not meet the single subject test. Research Publication No. 392 at 3.

Our most recent case invalidating a bill because it violated the single subject requirement was *In re House Bill No. 1353,* 738 P.2d at 371. There we considered whether a bill containing forty-six sections contained more than a single subject. *Id.* at 373. The bill included provisions such as reduction of state contributions to state employees' retirement funds, creation of a commission on information management in the department of administration, imposition of a charge against accounts of inmates of the department of corrections for each medical visit, imposition or increase of fees to be charged by various state agencies, as well as numerous other provisions. In invalidating the bill, we held that the subject matter of a bill must be "necessarily or properly connected" rather than "disconnected or incongruous" to satisfy the single subject requirement. *Id.* at 374. Further, we concluded that the common characteristic of monetary impact was too broad and too general to be classified as a single subject. *Id.* at 373.

The Board contends that the Initiative's two paragraphs addressing elections for water conservation and water conservancy districts are inherent and integral parts of the measure. The Board states:

> In order to insure that these bodies properly carry out their responsibilities, the measure requires that certain activities are subject to a vote of the people ... Elections merely ensure that the people have a

---

5. The Legislative Council's publication on ballot issues is disseminated to voters before each general election. It describes each ballot issue and states popular arguments for and against each issue. In past cases, we have found the Legislative Council's publication to be a helpful source

equivalent to the legislative history of a proposed amendment. *See Bloomer v. Cty. Bd. of Comm'rs,* 799 P.2d 942 (Colo.1990); *Carrara Place, Ltd. v. Arapahoe County Bd. of Equalization,* 761 P.2d 197, 203 (Colo.1988).

more direct voice to ensure policies are implemented.

We find this position unpersuasive.

No necessary connection exists between the two district election requirements paragraphs and the two public trust water rights paragraphs. The public trust water rights paragraphs of the Initiative impose obligations on the state of Colorado to recognize and protect public ownership of water. The water conservancy or conservation districts have little or no power over the administration of the public water rights or the development of a statewide public trust doctrine because such rights must be administered and defended by the state and not by the local district.

Our analysis gains further support from the text of the Initiative. The district election paragraphs state no connection to a "public trust" doctrine and do not indicate how the election changes would facilitate the development of a "public trust" doctrine. The proponents of the Initiative have provided no argument as to the relevance or relationship of the district election changes to the development of a public trust doctrine. The Board's argument that election procedures often are included in "omnibus" legislation likewise fails to show any connection between the two parts of the Initiative. Thus, the very terms of the initiative fail to connect the election paragraphs with the water rights paragraphs.

The common characteristic that the paragraphs all involve "water" is too general and too broad to constitute a single subject just as "monetary impact" was found not to be a single subject in *In re House Bill No. 1353*, 738 P.2d at 373. In the present case, we can find no unifying or common objective between the district election paragraphs and the public trust doctrine paragraphs. The Initiative, if enacted, would establish election and boundary rules for water conservancy and conservation districts while also requiring effective enforcement and development of a "strong public trust" doctrine. These two objectives are separate and discrete and, thus, must be accomplished through separate initiatives.

### III.

Because the Initiative seeks to accomplish more than one purpose, and the two purposes are not connected to each other, the Initiative violates the single subject provision of Article V, Section 1(5.5) of the Colorado Constitution. Thus, under this constitutional provision, the Board erred in setting the Titles and Summary for the Initiative. We remand this matter to the Board with directions to strike the Titles and Summary, and to return the Initiative to its proponents.