**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

**v.**

**Stacy CLENDENIN, Defendant–**
**Appellant.**

**No. 08CA0624.**

Colorado Court of Appeals,
Div. VI.

Oct. 29, 2009.

Rehearing Denied Dec. 17, 2009.

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Robert J. Corry, Jr., Denver, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

In this case, we conclude that to qualify as a "primary caregiver" under Colorado Constitution article XVIII, section 14, a person must do more to manage the well-being of a patient who has a debilitating medical condition than merely supply marijuana.

Accordingly, we affirm the judgment of conviction entered against defendant, Stacy Clendenin, on jury verdicts finding her guilty of cultivation of marijuana, possession with intent to distribute marijuana, possession of marijuana concentrate, possession of marijuana—eight ounces or more, and possession of drug paraphernalia.

## I. Facts and Procedural Background

A Longmont police detective received a tip from an informant that defendant's residence had "come and go" traffic. After obtaining utility and assessor records for the property and several similarly-sized nearby residences, he discovered that the power usage at defendant's house was four times greater than that of comparable houses between June and September 2006 except for one month, when it was three times higher. Defendant's power usage was also three times higher than the previous resident's. The detective conducted a solid waste inspection and found three marijuana stalks located inside a trash can in front of defendant's house.

Based on this information, he obtained a search warrant.

When the detective executed the warrant, defendant opened the door and identified herself. He smelled a strong scent of marijuana and informed her that he had a warrant to search the residence. Defendant escorted the detective to the basement where she had two "grow rooms," and told the detective she grew four kinds of marijuana for medical purposes because she suffered from migraine headaches. During the search, the detective found forty-four marijuana plants, $572 in defendant's bedroom, and sixty-seven medium-sized zip lock jeweler's bags.

Prior to trial, defendant moved to suppress evidence seized during the search, arguing that the affidavit for the search warrant lacked probable cause. The trial court concluded that the marijuana stalks found in the trash can and the utility bill information established probable cause. The court also ruled that the evidence was admissible under the good faith exception, and denied defendant's motion.

Because we presume the trial court properly denied defendant's motion to suppress for the reasons discussed in Part III below, we begin our analysis by addressing her argument that the trial court erred in limiting her ability to present affirmative defenses.

## II. Affirmative Defenses

Defendant contends the trial court erred in limiting her ability to present the "primary care-giver" and "end user" affirmative defenses provided under Colorado Constitution article XVIII, section 14(2)(a), and section 18–18–302(3), C.R.S.2009, respectively. We discern no error.

### A. Primary Care–Giver

■ We review de novo the interpretation of a constitutional provision. *Danielson v. Dennis*, 139 P.3d 688, 690–91 (Colo.2006); *Rocky Mtn. Animal Def. v. Colo. Div. of Wildlife*, 100 P.3d 508, 513 (Colo.App.2004).

In relevant part, the Colorado Constitution provides:

[A] patient or primary care-giver charged with a violation of the state's criminal laws related to the patient's medical use of marijuana will be deemed to have established an affirmative defense to such allegation where:

(I) The patient was previously diagnosed by a physician as having a debilitating medical condition;

(II) The patient was advised by his or her physician, in the context of a bona fide physician-patient relationship, that the patient might benefit from the medical use of marijuana in connection with a debilitating medical condition; and

(III) The patient and his or her primary caregiver were collectively in possession of amounts of marijuana only as permitted under this section.

Colo. Const. art. XVIII, § 14(2)(a).

"Primary care-giver" is defined as "a person, other than the patient and the patient's physician, who is eighteen years of age or older and *has significant responsibility for managing the well-being of a patient* who has a debilitating medical condition." Colo. Const. art. XVIII, § 14(1)(f) (emphasis added).

Defendant maintains that she qualified as a "primary caregiver" under the Colorado Constitution because "the provision of medical marijuana, itself, ... constitutes the 'significant responsibility' required to be a caregiver," and, thus, she was entitled to assert the affirmative defense provided in section 14(2)(a). The trial court rejected defendant's argument, ruling that by law, a marijuana grower who has no personal contact with patients does not satisfy the "primary caregiver" definition, and therefore only allowed testimony from witnesses with whom defendant had personal contact. We likewise reject defendant's argument, but on a basis different from the trial court's rationale. We conclude that to qualify as a "primary caregiver" a person must do more than merely supply a patient who has a debilitating medical condition with marijuana.

In so concluding, we are guided by traditional principles of constitutional interpretation. We afford the language its ordinary

and common meaning to give effect to every word and term contained therein. *People v. Rodriguez*, 112 P.3d 693, 696 (Colo.2005). When the language is plain, its meaning clear, and no absurdity is involved, constitutional provisions must be enforced as written. *Id.*

■ We are also guided by section 18–18–406.3(1), C.R.S.2009, titled "Medical use of marijuana by persons diagnosed with debilitating medical conditions," which became effective in 2001, and provides, in relevant part:

> (b) Section 14 of article XVIII of the state constitution creates limited exceptions to the criminal laws of this state for patients, primary care givers, and physicians concerning the medical use of marijuana by a patient to alleviate an appropriately diagnosed debilitating medical condition;
>
> . . .
>
> (g) Section 14 of article XVIII of the state constitution requires the general assembly to determine and enact criminal penalties for specific acts described in the constitutional provision;
>
> (h) In interpreting the provisions of section 14 of article XVIII of the state constitution, the general assembly . . . has attempted to give the . . . words of the constitutional provision their plain meaning;
>
> (i) This section reflects the considered judgment of the general assembly regarding the meaning and implementation of the provisions of section 14 of article XVIII of the state constitution.

This section is consistent with our case law concerning constitutional interpretation. *See Rodriguez*, 112 P.3d at 696. Further, the power to define criminal conduct and to establish the legal components for criminal liability is vested with the General Assembly, which is also empowered to formulate criminal responsibility principles and, within constitutional limitations, to restrict defenses to particular crimes. *People v. Low*, 732 P.2d 622, 627 (Colo.1987).

The constitutional "primary care-giver" definition has not been reviewed by the appellate courts in Colorado. However, courts in other states with statutes similar to our constitutional provisions have addressed this issue and concluded that an individual must do more than simply supply a patient with medical marijuana to qualify as a "primary care-giver." *See People v. Mentch*, 45 Cal.4th 274, 85 Cal.Rptr.3d 480, 195 P.3d 1061 (2008); *State v. Mullins*, 128 Wash.App. 633, 116 P.3d 441 (2005). We acknowledge that Washington's and California's "primary care-giver" statutory provisions are not identical to article XVIII, section 14(1)(f). These states' statutes specifically delineate the tasks required to qualify as a "primary care-giver"; in contrast, our constitutional provision requires that a primary care-giver have significant responsibility for managing the patient's well-being. However, both states' statutes, like Colorado's Constitution, address the requisite degree of responsibility for a patient's care necessary to qualify as a primary care-giver. Thus, they are sufficiently similar to inform our analysis.

Washington's Medical Use of Marijuana Act in effect at the time of the *Mullins* decision defined a primary care-giver as a person "18 years of age or older; . . . *responsible for the housing, health, or care of the patient*; and . . . designated in writing by the patient to perform the duties of primary caregiver." *Mullins*, 116 P.3d at 444 (citing former version of Wash. Rev.Code § 69.51A.010(2)) (emphasis added). In *Mullins*, the court rejected the defendant's claim that he qualified as a primary care-giver because he supplied the patient with medical marijuana. *Id.* at 446. The court reasoned that although the defendant "arguably was providing a basic service in so far as he supplied [the patient] with the drugs necessary to treat his medical condition," he "was responsible for only one aspect of [the patient's] care" and did not perform a primary care-giver's statutory duties. *Id.*

Similarly, the California Supreme Court concluded that the defendant did not qualify as a primary care-giver, defined as "the individual designated by the person exempted under this section who has *consistently assumed responsibility for the housing, health, or safety* of that person." *Mentch*, 85 Cal. Rptr.3d 480, 195 P.3d at 1067 (quoting Cal.

Health & Safety Code § 11362.5(e)) (emphasis added). The court reasoned that California, like Colorado, limits "the caregiver exception by using a higher standard for the nature of the relationship and responsibility assumed." *Id.* at 1069 n. 8. The court therefore held that "a primary caregiver must establish he or she satisfies the responsibility clause based on evidence independent of the administration of medical marijuana." *Id.* at 1068; *see also People v. Hochanadel,* 176 Cal.App.4th 997, 98 Cal.Rptr.3d 347, 362 (2009) (storefront medical marijuana dispensary operators were not "primary caregivers" despite being designated as such by patients because no evidence showed an existing, established relationship of providing for patients' housing, health, or safety independent of administering medical marijuana).

■ Like these two courts, we conclude that the primary care-giver affirmative defense does not apply "where the provision of marijuana is itself the substance of the relationship." *Mentch,* 85 Cal.Rptr.3d 480, 195 P.3d at 1070.

We are not persuaded by defendant's argument that providing marijuana for medical use itself constitutes "significant responsibility for managing the well-being of a patient." In other contexts, divisions of this court have interpreted "significant" to mean "deserving to be considered; important; notable." *E.g., Z.J. Gifts D–2, L.L.C. v. City of Aurora,* 93 P.3d 633, 639–40 (Colo.App.2004) (quoting *Webster's Third New International Dictionary* 2116); *City of Colorado Springs v. Board of County Comm'rs,* 895 P.2d 1105, 1114 (Colo.App.1994). Thus, the "significant responsibility" contemplated by article XVII, section 14(1)(f) involves more than being accountable for just one aspect of a patient's well-being. In addition, the responsibility that must be assumed by a primary caregiver is more than mere accountability, but also requires managing a patient's well-being. The Colorado Supreme Court has interpreted "manage" to mean "to direct, control, govern, administer, oversee." *Trozzo v. People,* 51 Colo. 323, 334, 117 P. 150, 154 (1911) (quoting *Commonwealth v. Johnson,* 144 Pa. 377, 22 A. 703, 704 (1891)).

■ Therefore, we conclude that the act of supplying marijuana for medical use, by itself, is insufficient to constitute significant management responsibility for a patient's well-being, and consequently is insufficient to constitutionally qualify a person doing so as a "primary care-giver."

Moreover, in Colorado, the acts of acquiring, possessing, producing, using, or transporting marijuana are included in the constitutional amendment's "medical use" definition. Colo. Const. art. XVIII, § 14(1)(b). Thus, had the amendment's authors intended to define a primary caregiver as someone who had significant responsibility for managing the "medical use" of marijuana by a patient with a debilitating condition, they could have done so. *Cf. In re Great Outdoors Colorado Trust Fund,* 913 P.2d 533, 540 (Colo.1996) (intent of initiative proponents not adequately expressed in language of the measure will not govern court's interpretation of the amendment).

Defendant urges a circular interpretation of the primary caregiver affirmative defense. According to her proposed definition, anyone who provides marijuana for medical use to a validly registered patient qualifies as a primary care-giver. Under that construction, there would be no need for a separate "primary caregiver" definition because the affirmative defense would apply to anyone distributing marijuana for medical use to such a patient. Likewise, anyone distributing marijuana for medical use would qualify as a "primary care-giver." *See Mentch,* 85 Cal. Rptr.3d 480, 195 P.3d at 1068 ("[Primary caregiver requires] more than simply providing marijuana. Otherwise, there would be no reason to have the definition of a caregiver because anybody who would be providing marijuana and related services would qualify as a caregiver[,] therefore giving them a defense to the very activity that's otherwise illegal." (quoting trial court)). Defendant's interpretation leads to absurd results and is contrary to statutory construction rules. *See AviComm, Inc. v. Colorado Public Utilities Comm'n,* 955 P.2d 1023, 1031 (Colo.1998) ("a statutory interpretation that defeats the leg-

islative intent or leads to an absurd result will not be followed").

■ Our interpretation is also informed by the Blue Book distributed for the 2000 election, in which the medical use of marijuana amendment was passed by the voters.

When interpreting a constitutional amendment, [courts] may look to the explanatory publication of the Legislative Council of the Colorado General Assembly, otherwise known as the Blue Book. While not binding, the Blue Book provides important insight into the electorate's understanding of the amendment when it was passed and also shows the public's intentions in adopting the amendment.

*Grossman v. Dean,* 80 P.3d 952, 962 (Colo. App.2003); *see Macravey v. Hamilton,* 898 P.2d 1076 (Colo.1995) (the Blue Book is a helpful source equivalent to the legislative history of a proposed amendment).

The Blue Book provided:

Current Colorado and federal criminal law prohibits the possession, distribution, and use of marijuana. The proposal does not affect federal criminal laws, but amends the Colorado Constitution to legalize the medical use of marijuana for patients who have registered with the state.... *Because the proposal does not change current law, distribution of marijuana will still be illegal in Colorado.*

*Patients on the registry are allowed to legally acquire, possess, use, grow, and transport marijuana and marijuana paraphernalia.*

Colorado Legislative Council, Research Pub. No. 475–6, *An Analysis of 2000 Ballot Proposals* 1 (2000) (emphasis added).

The Blue Book distinguishes between acquisition and possession on the one hand, and distribution on the other. This distinction further bolsters our conclusion that to qualify as a primary care-giver under our constitution requires more than merely supplying marijuana to a patient.

Defendant maintains that the following Department of Public Health and Environment definition should guide our interpretation:

"Significant responsibility for managing the well-being of a patient" means assisting a patient with daily activities, including but not limited to transportation, housekeeping or meal preparation or shopping or making any necessary arrangement for access to medical care or services or provision of medical marijuana.

Reg. 2(A)(ii)-(iii), 5 Code Colo. Regs. 1006–2.

However, because defendant had already been tried and convicted when this regulation became effective on August 30, 2009, this regulatory definition is inapplicable to this case. Thus, we need not address whether defendant qualified as a "primary care-giver" under this definition, nor need we decide whether the definition comports with the constitutional "primary care-giver" definition.

We also reject defendant's contention that the rule of lenity applies here. The rule of lenity provides that courts must resolve ambiguities in the defendant's favor. *See People v. Leske,* 957 P.2d 1030, 1042 (Colo.1998). It is a rule of last resort and does not apply to cases where, as here, the applicable provision is unambiguous. *See People v. Summers,* 208 P.3d 251 (Colo.2009) (rule of lenity is a rule of last resort invoked only after other means of ascertaining the legislature's intent have failed); *Frazier v. People,* 90 P.3d 807, 811 (Colo.2004) ("application of the rule of lenity is a last resort and will not be applied when we are able to discern the intent of the General Assembly"); *see also Leske,* 957 P.2d at 1042 (rule of lenity "may not be used to frustrate clearly expressed legislative intent"); *Terry v. People,* 977 P.2d 145, 151 (Colo.1999) ("giving statutory words their full meaning in the context in which they are used does not violate the rule of lenity" (quoting *People v. Dist. Court,* 713 P.2d 918, 922 (Colo.1986))).

### B.  "End User" Defense Instruction

■ Defendant contends the trial court erred in rejecting her "end user" affirmative defense instruction because she qualified under the registration exceptions provided in section 18–18–302, C.R.S.2009. We will not disturb the court's ruling because defendant has not provided us with an adequate record to review her claim.

Defendant bears the burden of providing the reviewing court with an adequate record that sets forth his or her appellate claims' factual underpinnings. *See People v. Rodriguez*, 914 P.2d 230, 260 (Colo.1996) (the appellant "bears the responsibility to designate the record on appeal and to ensure its transmission to the appellate court"). Absent an adequate record, we presume the trial court's findings and conclusions are correct. *Till v. People*, 196 Colo. 126, 127, 581 P.2d 299, 299 (1978).

Because defendant has not provided us with trial transcripts, we are unable to determine whether she presented any evidence tending to establish her "end user" affirmative defense and thus requiring a corresponding instruction. *See People v. Garcia*, 113 P.3d 775, 784 (Colo.2005). Accordingly, we presume the trial court did not err in concluding that defendant failed to present any evidence supporting her "end-user" affirmative defense instruction. *See Till*, 196 Colo. at 127, 581 P.2d at 299.

### III. Search Warrant

Defendant contends the trial court erred in not suppressing evidence obtained when her home was searched. Because the affidavit and search warrant are not part of the record on appeal, we presume the trial court properly denied defendant's motion.

The United States and Colorado Constitutions prohibit issuing a search warrant except on probable cause, supported by oath or affirmation particularly describing the place to be searched and the things to be seized. *People v. Pacheco*, 175 P.3d 91, 94 (Colo. 2006). Probable cause must be established within an affidavit's four corners. *Id.*

Any facts not appearing in the record cannot be reviewed. *People v. Wells*, 776 P.2d 386, 390 (Colo.1989). Here, the affidavit and search warrant are not in the record on appeal. A reviewing court presumes that material portions omitted from the record would support the judgment. *Id.* We therefore presume the trial court properly denied defendant's motion to suppress, and the affidavit and search warrant established probable cause. *See Till*, 196 Colo. at 127, 581 P.2d at 299.

### IV. Constitutionality of Possession with Intent to Distribute

Finally, defendant contends that section 18–18–406(8)(b)(I), C.R.S.2009, defining the crime of possession with intent to distribute, is unconstitutionally vague because it fails to state the quantity required to permit the inference that the possessor intended to distribute the controlled substance. We conclude the statute is constitutional.

Statutes are presumed constitutional. *People v. McCullough*, 6 P.3d 774, 779 (Colo. 2000). The party challenging a statute's validity carries the burden of proving unconstitutionality beyond a reasonable doubt. *People v. Hickman*, 988 P.2d 628, 634 (Colo. 1999).

A law is void for vagueness where its prohibitions are not clearly defined and it is reasonably susceptible of more than one interpretation by a person of common intelligence. *Id.* at 643. Vague laws fail to give fair notice of the conduct prohibited and do not supply ·adequate standards to prevent arbitrary and discriminatory enforcement. *Id.*

In relevant part, section 18–18–406(8)(b)(I) provides "it is unlawful for any person knowingly to manufacture, dispense, sell, distribute, or possess with intent to manufacture, dispense, sell, or distribute mari[j]uana." The phrase "intent to distribute" is a term that a person of ordinary intelligence can understand. The quantity required to permit the fact finder to infer that the possessor intended to distribute a controlled substance is "evidentiary in nature and necessarily depends upon all the facts and circumstances of the case ... and mention thereof in the statute is entirely unnecessary." *United States v. King*, 485 F.2d 353, 357 (10th Cir. 1973) (rejecting defendant's argument that 21 U.S.C. § 841, which prohibits manufacturing, distributing, dispensing, or possessing controlled substances with intent to distribute, is void for vagueness).

The judgment is affirmed.

Judge LICHTENSTEIN concurs.

Judge LOEB specially concurs.

Judge LOEB specially concurring.

I agree with the majority's disposition and reasoning with respect to all issues in this case. However, I write separately with respect to the primary care-giver issue to express my concern about a practical anomaly regarding the application of Colorado's medical marijuana constitutional amendment, which, in my view, cries out for legislative action.

The fundamental legal issue we are called on to resolve in this appeal is whether to qualify as a "primary care-giver" under Colorado Constitution article XVIII, section 14(1)(f), a person must do more to manage a qualifying patient's well-being than merely supply marijuana. In resolving that issue of constitutional interpretation, we should strive to ascertain and give effect to the intent of those who adopted the amendment. *See Grossman v. Dean,* 80 P.3d 952, 962 (Colo. App.2003). To do so, we "must determine what the voters believed the language of the amendment meant when they approved it, by giving the language the natural and popular meaning usually understood by the voters." *Id.* Applying this plain language analysis, the majority concludes, and I agree, that the constitutional definition of "primary care-giver" means something more than simply supplying a qualifying patient with medical marijuana.

The practical problem with this result, however, is that the medical marijuana constitutional amendment adopted by the voters almost ten years ago essentially closes its eyes to the reality that a qualifying patient or his or her primary care-giver (as defined in the amendment and interpreted in the majority opinion) must somehow engage in an initial transaction to acquire the marijuana from some other person who is not protected from criminal prosecution and conviction by the constitutional amendment or any legislative enactment. Thus, although qualifying patients and primary caregivers may be protected from criminal liability, nothing in the amendment protects their original suppliers from prosecution or conviction on drug-related charges.

Indeed, it appears this was the very intent of the amendment, as presented to the voters. As noted by the majority, when interpreting a constitutional amendment, courts often look to the explanatory publication of the Legislative Council of the Colorado General Assembly, otherwise known as the Blue Book. *Id.* Here, in the background section of the Blue Book's analysis of the medical marijuana amendment, it states that because the proposed amendment "does not change current law, distribution of marijuana will still be illegal in Colorado." *See* Colorado Legislative Council, Research Pub. No. 475–6, *An Analysis of 2000 Ballot Proposals* 1 (2000). Further, in describing the arguments against the proposed amendment, the Blue Book noted, "[T]he proposal does not provide any legal means by which a patient may obtain marijuana. Under state criminal law, it will still be illegal to sell marijuana or marijuana plants to another individual, including a patient on the state registry." *Id.* at 2.

Thus, the amendment has created a system by which qualifying patients and their primary care-givers can legally use medical marijuana (which includes the act of acquiring it) but they still have to acquire it from someone who will violate the law by selling or providing the marijuana to them. In my view, while this result may not be absurd, and, indeed, appears to be exactly what the voters intended in passing the amendment, it poses a bizarre practical anomaly—in order to effectuate the purpose of the amendment, namely, to provide an affirmative defense or immunity from prosecution to patients truly in need of medical marijuana, it forces such persons or their primary care-givers to engage in an illegal transaction (at least from the standpoint of the supplier) to obtain the marijuana in the first place. This is because neither the amendment nor any subsequent legislation passed by the General Assembly sets forth any mechanism (such as state licensed dispensaries) by which patients or their caregivers can acquire medical marijuana. Nor does the amendment make any attempt to distinguish between types of suppliers or dealers of marijuana. A drug dealer on the street and a person who grows marijuana plants in his or her home solely for the purpose of providing it to qualified medical patients are treated the same; both

are subject to criminal prosecution and conviction if they provide medical marijuana to a qualifying patient or his or her primary care-giver. Thus, this system seems to provide a disincentive for patients in need to acquire medical marijuana, and it certainly provides no incentive, other than pure monetary gain, for anyone to provide medical marijuana to a qualifying patient or primary care-giver.

To some extent, I suspect this anomaly is the result of the vagaries and weaknesses in the voter initiative process in Colorado. It is probably nearly impossible to draft a proposed constitutional amendment that could anticipate and provide for all conceivable practical problems that may arise in actually applying and implementing the amendment. I recognize there are obviously political aspects to proposed constitutional initiatives as well; proponents of such initiatives, as may have been the case here, will make concessions and compromises in the ultimate proposal submitted to the voters in order to maximize the chances of getting it passed.

It is not the province of this court to involve itself in policy or legislative considerations, and I express no opinion whatsoever on the wisdom of the original constitutional amendment or how the practical anomaly discussed herein might be alleviated. My purpose in writing separately is simply to identify the flaw I perceive in the current system and to suggest that some legislative action will be required if the salutary medical purposes of the amendment are to be fully effectuated.