QUESTIONS PRESENTED AND SHORT ANSWERS
The Governor's Chief Legal Counsel presented the following six questions:
 Question 1. Is medical marijuana "tangible personal property" subject to the state sales tax under the Colorado tax code, section 39-26-104(1)(a), C.R.S.?
 Answer 1. Yes. Medical marijuana is tangible personal property and is subject to the state sales tax, unless eligible for a specific sales tax exemption.
 Question 2. Do transactions involving medical marijuana constitute "sales of drugs dispensed in accordance with a prescription" such that they would qualify for tax exemption under section 39-26-717(1)(a), C.R.S.?
 Answer 2. No. Medical marijuana is not dispensed in accordance with a prescription.
 Question 3. Do medical marijuana transactions qualify for the agricultural tax exemptions under section 39-26-716, C.R.S.?
 Answer 3. Generally not, except as discussed in response to Question 4, below. *Page 2 
 Question 4. Does the form of marijuana sold or purchased alter the tax treatment of the transaction?
 Answer 4. Yes. Pursuant to section 39-26-716(4)(b), C.R.S., all sales and purchases of seeds are exempt from sales tax in Colorado. Other forms of marijuana sold or purchased would not qualify for this sales tax exemption.
 Question 5. Regardless of the legality of the activity, are individuals and enterprises that engage in the sale of medical marijuana pursuant to Amendment 20 required to obtain a license and otherwise comply with the requirements of section 39-26-103, C.R.S.?
 Answer 5. Yes. Unless subject to a particular exemption, it is unlawful under section 39-26-103(1)(a), C.R.S., for any individual or enterprise to engage in the business of selling at retail without first having obtained a retail sales license issued by the Colorado Department of Revenue.
 Question 6. If such transactions are taxable, whose obligation is it to collect and remit any sales tax due for the purchase or sale of medical marijuana?
 Answer 6. The obligation to collect and remit sales tax due is borne by the vendor.
 BACKGROUND
In 2000, Colorado voters amended the Colorado Constitution by adopting an amendment (hereinafter "Amendment 20") authorizing the medical use of marijuana for persons suffering from defined "debilitating medical conditions."[1]
Amendment 20 left many legal questions unanswered. The Blue Book[2] circulated in connection with Amendment 20 stated that under the proposed amendment, possession of marijuana would be permitted for patients who have registered with the state, but distribution of marijuana would still be illegal in Colorado.[3]
Consequently, Amendment 20 provides certain protections from state criminal liability for qualifying patients and primary caregivers, but "nothing in the amendment protects their original suppliers from prosecution or conviction on drug-related charges."[4] *Page 3 
Further complicating the application of Amendment 20, federal law prohibits the manufacture, distribution, dispensing, or possession with intent to manufacture, distribute or dispense marijuana.[5] The United States Supreme Court has held that under the Supremacy Clause of the United States Constitution, where federal and state law conflict, federal law prevails.[6] In another case, the Court has upheld application of federal law to enjoin distribution of medical marijuana under a California law that is similar to Amendment 20.[7]
Nevertheless, fourteen states, including Colorado, currently have laws in some form addressing the use of marijuana for medical purposes.[8] On October 19, 2009, the United States Department of Justice issued a memorandum addressing the issue (hereinafter, "Department of Justice Memorandum"). The Department of Justice Memorandum clarified that compliance with a state's medical marijuana laws does not constitute a defense to a charge under 21 U.S.C. § 841 and related provisions, but it stated that United States Attorneys should not "focus" federal resources on individuals "whose actions are in clear and unambiguous compliance with existing state laws providing for the medical use of marijuana."[9] Recently, Colorado has witnessed a surge in dispensaries providing medical marijuana to patients.
Despite the legal confusion surrounding the medical marijuana industry, the taxation question is relatively straightforward. Colorado's sales tax applies to "the purchase price paid or charged upon all sales and purchases of tangible personal property at retail."[10]
Colorado law contains no sales tax exemption for legally prohibited or otherwise unauthorized sales. Sales of medical marijuana are subject to state sales tax, unless a specific sales tax exemption applies.
 DISCUSSION Question 1. Is medical marijuana "tangible personalproperty" subject to the state sales tax under the Colorado taxcode, section 39-26-104(1)(a), C.R.S.?
Colorado imposes a tax on "the purchase price paid or charged upon all sales and purchases of tangible personal property at retail."[11] Tangible personal property means corporeal personal property.[12] "Retail sale" is defined as "all sales made within the state except wholesale sales."[13] The Colorado Department of Revenue ("Revenue") further defines "tangible personal property" via regulation as follows: *Page 4 
 "Tangible personal property" embraces all goods, wares, merchandise, products and commodities, and all tangible or corporeal things which are dealt in, capable of being processed or exchanged. . . .[14]
Under the plain language of both the statutory and the regulatory definition of "tangible personal property," medical marijuana constitutes tangible personal property subject to state sales tax, unless it qualifies for a specific sales tax exemption.[15]
 Question 2. Do transactions involving medicalmarijuana constitute "sales of drugs dispensed in accordance with aprescription "such that they would qualify for tax exemptionunder section 39-26-717(1)(a), C.R.S.?
The State of Colorado applies its sales tax provisions broadly.[16] In construing tax statutes there is a strong presumption that taxation is the rule and exemption the rare exception.[17] The burden is on the taxpayer who claims an exemption to establish clearly the right to such an exemption.[18]
Like Colorado courts, "[u]nless the statutes and the constitution place the property within a stated category of exemption, we resolve doubts regarding the meaning of statutes and the constitution in favor of subjecting the property to payment of its fair proportion of taxation."[19]
Section 39-26-717(1)(a), C.R.S., exempts from state sales tax, among other items, "[a]ll sales of drugs dispensed in accordance with a prescription." The words "prescription" and "dispensed" are medical terms not defined within state statutes governing sales tax, but are further discussed in regulation. Revenue's rule defining "prescription" for purposes of the sales tax exemption in section 39-26-717(1)(a), C.R.S. provides as follows:
 A "prescription" means any order in writing, dated and signed by a practitioner, or given orally by a practitioner, and immediately reduced to writing by the pharmacist, assistant pharmacist, or pharmacy intern, specifying the name and address of the person for whom a medicine, drug, or poison is ordered and directions, if any, to be placed on the label."[20] *Page 5 
Under Amendment 20, no such prescription is contemplated. Instead, a physician merely provides written documentation that a patient has a debilitating medical condition and "might benefit from the medical use of marijuana."[21]
Moreover, under federal law, marijuana — medical or otherwise — cannot be distributed by prescription. In addition to meeting any state licensure and regulatory requirements, any individual or entity aspiring to dispense a controlled substance must comply with federal law and obtain a registration from the United States Drug Enforcement Administration ("DEA").[22] Such registration is available only for dispensing of schedules II through V controlled substances.[23] Under federal law, marijuana is a schedule I controlled substance.[24] Unlike drugs in other schedules, schedule I controlled substances cannot be dispensed under a prescription.[25]
Sales of medical marijuana are not and cannot be "dispensed in accordance with a prescription" and therefore are not exempt from sales tax pursuant to section 39-26-717(l)(a), C.R.S.
Question 3. Do medical marijuana transactions qualify forthe agricultural tax exemptionsunder section 39-26-716, C.R.S.?
 Question 4. Does the form of marijuana sold or purchasedalter the tax treatment of the transaction?
Section 39-26-716, C.R.S., exempts several agriculturally-related products from state sales tax. The majority of the provisions listed under section 716 are not applicable to retail sales of medical marijuana. Subsection 4(b) of section 716, however, exempts from state sales tax "all sales and purchases of seeds." Marijuana sold in the form of seeds would qualify for this exemption. Marijuana sold in the form of leaves, buds, flowers or plants would not qualify, and would be subject to sales tax.
Section 39-26-707(1)(e), C.R.S., generally exempts sales of food from sales tax. Marijuana sold in the form of food would not qualify for this exemption, however. Revenue Regulation 26-102.4.5, 1 C.C.R. 201-4, clarifies that the following items do not constitute "food" and do not qualify for sales tax exemption under section 39-26-707(1)(e), C.R.S.: medicines, therapeutic products and deficiency correctors such as vitamins and minerals, cod liver oil, *Page 6 
and "other such items which are primarily used for medicinal purposes or as health aids."[26] By definition, any food product containing medical marijuana and sold pursuant to Amendment 20 must be used "for medicinal purposes" and would not be exempt from sales tax under section 39-26-707, C.R.S.
Question 5. Regardless of the legality of the activity,are individuals and enterprises that engage in the sale of medicalmarijuana pursuant to Amendment 20 required to obtain a license andotherwise comply with the requirements of section 39-26-103, C.R.S.?
As discussed in the Background section above, distribution of medical marijuana is illegal under federal law. Except where transfer of medical marijuana between a primary care-giver and a patient is authorized by Amendment 20, distribution of marijuana is also illegal under state law.[27] Regardless of the legality of the activity, however, individuals and enterprises that engage in the sale of medical marijuana pursuant to Amendment 20 are required to obtain a retail sales tax license and otherwise comply with the requirements of section 39-26-103, C.R.S. Unless subject to a particular exemption, it is unlawful for any person to engage in the business of selling at retail without first having obtained a retail sales license granted and issued by the executive director of Revenue.[28]
Colorado is not the first state to consider this question. In February 2007, the California State Board of Equalization, which collects California's state sales and use tax, issued a "Special Notice" clarifying that those who sell medical marijuana in the state of California must hold a seller's permit and are generally subject to sales tax.[29] The "Special Notice" explains: "Having a seller's permit does not mean you have the authority to make unlawful sales. The permit only provides a way to remit any sales and taxes due."[30]
This analysis is consistent with federal treatment of illegally obtained income. While the federal government does not impose a sales tax, for federal income tax purposes, "gross income" includes income derived from illegal sources.[31]
Thus, under both federal and state tax law, an individual or business must pay applicable tax even if the taxpayer is noncompliant with the law, and even the taxpayer sells an illegal product. Failing to obtain the required sales tax license and remit required sales taxes would add another illegality to the operation. *Page 7 
A state retail sales tax license does not represent an endorsement of an enterprise's compliance with the law and does not legitimize an illegal act. As under federal tax law, however, state tax law should not allow an individual or business engaged in an unlawful or potentially unlawful enterprise to avoid tax liability.
Under Colorado law, an individual or enterprise that engages in the sale of marijuana pursuant to Amendment 20 (or otherwise, for that matter) must obtain a retail sales tax license and comply with the requirements of section 39-26-103, C.R.S.
Question 6. If such transactions are taxable, whoseobligation is it to collect and remit any sales tax due for thepurchase or sale of medical marijuana?
The obligation to collect and remit sales tax due is borne by the vendor.[32] The retailer must add the tax imposed, or the average equivalent thereof, to the sales price or charge, showing such tax as a separate and distinct item.[33] When added, such tax constitutes a part of the price or charge and is a debt from the consumer to the retailer.[34] All sums of money paid by the purchaser to the retailer as taxes constitute public money, the property of the state in the hands of such retailer, who holds the same in trust for the sole use and benefit of the State until paid to Revenue.[35]
Revenue Regulation 26-104.1(a), 1 C.C.R. 201-4, explains: "The tax is imposed upon the purchaser. However, if the transaction involves a licensed vendor, the duty is imposed upon the vendor to add the tax to the sales price and to collect and remit the tax to the state." The sales tax constitutes a part of the price, and is a debt from the consumer or user to the vendor or retailer until paid.[36] The vendor, however, is liable for remitting payment of the amount of the sales tax to Revenue, regardless of whether the vendor has actually collected from the consumer.[37] *Page 8 
 CONCLUSION
Medical marijuana is tangible property that is generally subject to state sales tax. Any individual or enterprise engaged in the sale of medical marijuana therefore must obtain a retail sales license from Revenue, and must collect and remit all state sales tax due.
Issued this 16th day of November, 2009.
 _________________________ JOHN W. SUTHERS Colorado Attorney General
[1]
Colo. Const. art. XVIII, § 14 (hereinafter "Amendment 20").
[2] The "Blue Book" is the explanatory publication of the Legislative Council of the Colorado General Assembly. It is not binding, but "provides important insight into the electorate's understanding" when passing a Colorado constitutional amendment and "also shows the public's intentions in adopting the amendment."People v. Clendenin, — P.3d —, 2009 WL 3464306 *5 (October 29, 2009), citing Grossman v.Dean, 80 P.3d 952, 962 (Colo. App. 2003).
[3] Colorado Legislative Council, Research Pub. No. 475-6, AnAnalysis of 2000 Ballot Proposals 1 (2000), cited in People v.Clendenin, — P.3d —, 2009 WL 3464306 *5 (October 29, 2009).
[4] Id. at *7 (Loeb, J., specially concurring).
[5] 21U.S.C. § 841(a)(1); 21 U.S.C. § 812(c).
[6] Gonzales v. Raich, 545 U.S. 1, 29 (2005).
[7] See U.S. v. Oakland Cannabis Buyers' Co-op,532 U.S. 483 (2001).
[8]
http://wvvw.iu5tice.gov/opa/pr/2009/October/09-ag-1119.html.
[9] http://blogs.usdoj.gov/blog/archives/192.
[10] § 39-26-104(1)(a), C.R.S.
[11] § 39-26-104(1)(a), C.R.S.
[12] § 39-26-102(15), C.R.S.
[13] Section 39-26-102(9), C.R.S.
[14] Revenue Regulation 39-26-102.15, 1 C.C.R. 201-4 (further language setting forth inapplicable exemptions omitted).
[15] See Telluride Resort and Spa, L.P., v. Colorado Departmentof Revenue, 40 P.3d 1260, 1264 (Colo. 2002) ("In taxation matters, we commence our analysis with the statutory provisions.").
[16] See A.D. Store v. Department of Revenue,19 P.3d 680, 682 (Colo. 2001).
[17] Colorado Dept. of Revenue v. Woodmen of the World,919 P.2d 806, 810 (Colo. 1996).
[18] Id.
[19] Telluride Resort and Spa, L.P. v. Colo. Department ofRevenue, 40 P.3d 1260, 1264 (Colo. 2002).
[20] Department of Revenue Regulation 39-26-717.1, 1 C.C.R. 201-4.
[21] Colo. Const. art. XVIII, §§ 14(2)(a)(I) and (II); (2)(c)(I) and (II), and (3)(b)(I).
[22] 21 C.F.R. § 1301.11.
[23] 21 C.F.R. 1301.13.
[24] 21 U.S.C. § 812(c).
[25] See also 21 U.S.C. § 829 (governing "prescriptions" and describing requirements associated with schedule II through V controlled substances only); US. v. Oakland Cannabis Buyers'Co-op, 532 U.S. 483, 492 n5 (2001) (Schedule I drugs cannot be dispensed under a prescription).
[26] Revenue Regulation 26-102.4.5, 1 C.C.R. 201-4, paragraphs (b)(8) and (9).See also Revenue Regulation 26-707.1(e),1 C.C.R. 201-4, and § 39-26-102(4.5), C.R.S.
[27] See, e.g. § 18-1-406(8)(b), C.R.S. (offenses related to marijuana); Colo. Const. art. XVIII, § 14(2)(a) and (2)(b) (defenses under Amendment 20); and § 18-1-406.3, C.R.S. (statutory provision governing medical use of marijuana in light of Amendment 20).
[28] § 39-26-103(1)(a), C.R.S.
[29] See
http://www.boe.ca.gov/news/pdf/medseller2007.pdf.
[30] Id.
[31] 26 U.S.C. § 61;26 C.F.R. § 1.61-14. But see 26
U.S.C § 280 E (disallowing any income tax deduction or credit for any amount paid or incurred in carrying on any trade or business activities related to trafficking in schedule I or II controlled substances prohibited by state or federal law).
[32] See § 39-26-105(1)(a), C.R.S.
[33] § 39-26-106(2)(a), C.R.S.
[34] Id.
[35] § 39-26-118(1), C.R.S.
[36] § 39-26-106(2)(a), C.R.S.
[37] § 39-26-105(1) (a), C.R.S.